**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCT LIABILITY LITIGATION** | **MDL DOCKET NO.:** |
|---|---|

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Movant-Plaintiff Brianna Murden respectfully submits this Brief in Support of Motion for Transfer and Coordination or Consolidation.

## BACKGROUND

Plaintiff Brianna Murden is a twenty-one-year-old female who compulsively uses Defendants' social media products, Facebook and Instagram. Shortly after engaging with Defendants' products around the age of ten, Plaintiff began exhibiting addictive and problematic use of the products. Prompted by the addictive design of Defendants' products, and the constant 24-hour stream of notifications emitted from these products, Plaintiff began getting less and less sleep. While addictively viewing images and videos that had been altered by the platforms' appearance and beauty enhancing product features and curated to her by the platforms' algorithms, Plaintiff began to struggle psychologically with her self-image and relationship with food. As a result of the dangerous design and other features of Defendants' products, Plaintiff subsequently developed injuries including social media compulsion, disordered eating, depression, body

dysmorphic disorder[14], multiple periods of suicidal ideation, severe anxiety, self-harm (*e.g.* cutting and burning herself), and a reduced inclination or ability to sleep.

The injuries suffered by Plaintiff were of no surprise to Defendants. As former Facebook employee turned "whistleblower" Frances Haugen testified to Congress, internal Meta documents show that Defendants were aware of the harm its products cause users, especially female children and adolescents. Unfortunately, Plaintiff is not the only young female suffering from these same injuries.

This motion for transfer involves at least twenty-eight (28) actions pending in seventeen (17) different districts across the United States, asserting nearly identical factual allegations and legal claims against Defendants. (*See* Schedule of Actions, attached as Exhibit "A"). The vast majority of Plaintiffs are adolescent females who are particularly vulnerable to addiction and other injuries caused by Defendants' algorithms as this population is in the formative years of their development.

**Plaintiffs.** The actions identically allege that, as designed and developed by Defendants, Meta's Facebook and Instagram products are unreasonably dangerous to users, particularly adolescents. Further, Defendants failed to warn minors and their parents about risks posed by the products; and the Facebook and Instagram products contained design defects as developed by Defendants. Plaintiffs come from geographically diverse regions, residing in Alabama, California,

---

[14] Body dysmorphic disorder is a mental disorder in which a person is preoccupied with an imagined physical defect or a minor defect that others often cannot see. Individuals who suffer from body dysmorphic disorder intensely focus on their appearance and body image, repeatedly checking the mirror, grooming or seeking reassurance, sometimes for many hours each day. The perceived flaw and the repetitive behaviors cause significant distress and impact ability to function in daily life. *See* Mayo Clinic Staff, *Body dysmorphic disorder*, Mayo Clinic (March 19, 2022), https://www.mayoclinic.org/diseases-conditions/body-dysmorphic-disorder/symptoms-causes/syc-20353938#:~:text=Overview,may%20avoid%20many%20social%20situations; Smitha Bhandari, MD, *Body Dysmorphic Disorder*, WebMD (June 30, 2020), https://www.webmd.com/mental-health/mental-health-body-dysmorphic-disorder.

Colorado, Delaware, Georgia, Florida, Illinois, Kentucky, Louisiana, Missouri, Oregon, Texas, Tennessee, Virginia, and Wisconsin.

**Defendants.**[15] Meta Platforms, Inc. ("Meta"), Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram LLC, and Siculus, Inc. (collectively, "Defendants") operate the world's largest family of social networks, primarily through the Facebook and Instagram platforms. Defendants Meta, and Siculus Inc. are Delaware corporations with their principal place(s) of business in Menlo Park, California. Defendant Facebook Payments, Inc. is a Florida corporation with its principal place of business in Menlo Park, California. Defendants Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Technologies, LLC, and Instagram, LLC were incorporated in Delaware, and the sole member of each of these LLCs is Defendant Meta.

**Status of Actions.** The actions are in their infancy. All but one case was filed in 2022, and discovery has not begun in any case. Currently, most cases still await an initial Rule 26(f) conference.

## LEGAL STANDARD

Transfer and consolidation is appropriate when actions pending in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by

[15] As stated in FN 1, other filed cases also name Defendants Snap, Inc., TikTok, Inc., and ByteDance, Inc. These Defendants operate the social media platforms "Snapchat" and "TikTok" and similarly use defectively design features resulting in youth addiction and other injuries. The complaints naming these two Defendants allege similar facts and injuries associated with adolescent use of these platforms.

> the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

In deciding whether to transfer a case under Section 1407, the Panel typically considers whether centralization would: (1) eliminate duplication in discovery; (2) avoid conflicting rules and schedules; (3) reduce litigation costs; and (4) conserve the time and effort of the parties, attorneys, witnesses, and courts. *See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixtures Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)).

## ARGUMENT

### I. TRANSFER OF THE ACTIONS TO ONE COURT FOR CONSOLIDATION OR COORDINATION IS APPROPRIATE UNDER 28 U.S.C. § 1407

Consolidation of pretrial proceedings in an MDL is appropriate if (1) actions pending in different federal courts involve "one or more common questions of fact"; and (2) consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Both factors strongly favor consolidating the pretrial proceedings of these actions.

#### A. Consolidation or Coordination Is Appropriate Because the Related Actions Involve One or More Common Questions of Fact.

Section 1407 requires that the cases to be consolidated raise "one or more common questions of fact." The Panel, however, need not find that the cases are identical. *See In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("[T]ransfer under Section 1407 does not requires a complete identity or even majority of common factual issues as a prerequisite to transfer."). The Panel consistently finds that cases involving overlapping factual issues are appropriate for consolidation or coordination. *See e.g., In re: JUUL Labs, Inc. Mktg.*,

*Sales Practices, Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019); *In re: Yasmin, Yaz (Drospirenone) Mktg., Sales Practices & Prods Liab. Litig.*, MDL. 2100, 2009 WL 3163531, at *1 (Oct. 1, 2009) ("We find that these 32 actions involve common questions of fact, and that centralization under Section 1407 in the Southern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation."); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("The Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Western District of Washington will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").

The actions subject to this motion are brought by Facebook and Instagram users, or in the case of users who are minors, their guardians. The actions allege, in short, that the Facebook and Instagram products, as designed by Defendants, were unreasonably dangerous to users, particularly adolescent users; Defendants failed to warn minor users and their parents about risks posed by the products; and the Facebook and Instagram products contained manufacturing defects as developed by Defendants. The factual allegations regarding Defendants' conduct in the complaints are substantially the same: Defendants' social media products are intentionally designed to be addictive and utilize sophisticated algorithms to manipulate and maximize user time and engagement. The complaints allege similar injuries because of Defendants' conduct. Further, because Section 1407 does not require a majority of common factual issues as a condition for transfer, the many common questions thus presented are more than sufficient to satisfy Section 1407. *See In re: Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

Additionally, these actions rely on comparable legal theories of recovery. The complaints allege similar claims of product liability, negligence, misrepresentation, fraud, unjust enrichment, breach of warranty, and infliction of emotional distress. While not every cause of action is asserted in every case, the complaints all share essentially the same legal causes of action and theories of Defendants' liability. As this Panel has noted, "the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core[.]" *In re: Oxycontin Antitrust Litig*., 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008).

Thus, consolidation or coordination is appropriate under 28 U.S.C. § 1407(a) because the actions involve significant common issues of fact.

**B. Consolidation or Coordination for Pretrial Proceedings Will Further the Convenience of Parties and Witnesses**

Consolidation or coordination under Section 1407(a) will serve the convenience of both the parties and witnesses.

First, early consolidation will reduce discovery costs and burdens between the parties. Currently, all but one of the pending cases are in the initial stages.[16] If the cases continue to proceed separately amongst many districts across the country, substantial duplicative discovery will occur because of the similarity between the matters. Multiple, distinct cases would involve similar rounds of initial responsive pleadings, repetitive written discovery, and duplicative depositions of the parties' witnesses. The Panel has consistently stated that Section 1407 is designed to prevent this repetition and duplication. *See, e.g., In re: Pilot Flying J Fuel Rebate Contract Litig. (No. 11)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of

[16] The only matter to proceed even to the responsive pleading stage is *Rodriguez,* where Defendants filed an initial motion to dismiss. *See Rodriguez v. Meta Platforms, Inc*., Case No. 3:22-cv-00401-JD, (N.D. Cal. 2022). All other cases, however, have yet to even hold a Rule 26(f) conference.

[Defendant's] officers and employees and duplicative document discovery[.]"); *In re: Starmed Health Pers. FLSA Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (transfer was ordered to "eliminate duplicative discovery" and "conserve the resources of the parties"); *In re: Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1382 (J.P.M.L. 2004) ("[T]ransfer under Section 1407 will offer the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands that duplicate activity[,]"). Indeed, consolidation is particularly needed here given youthfulness of the plaintiff population, which introduces a layer of complexity given the sensitivity of the injuries alleged and related confidentiality concerns. To ensure that the plaintiffs are afforded all protections available under the law, it will be beneficial if the process of obtaining and handling discoverable information is conducted consistently under the watch of a single judge.

Second, consolidation will avoid inconsistent rulings between the various courts. That risk is heightened in this litigation, where initial decisions regarding discovery of the parties' electronically stored information ("ESI") is particularly important as this case centers on plaintiffs' use of Defendants' online Facebook and Instagram products. These cases involve complex data and data recovery regarding user information and interaction with Defendants' algorithms and other product features. The parties would benefit from a uniform process. But federal district courts often have different model or standard ESI protocol orders. For example, the Middle District of Tennessee, where one action is pending, has a differing ESI protocol than the Northern District of Illinois, where multiple actions are pending.[17] These differences could produce various discovery

[17] Middle District of Tennessee's Administrative Order No. 174-1 entered September 12, 2018, and Northern District of Illinois Magistrate Judge Sunil R. Harjani's [Model] Stipulated Order for Discovery of Electronically Stored Information for Standard Litigation, differ in the areas of preservation, collection, search, and form of production of ESI, as well as, how to approach

motions followed by inconsistent scope, preservation, and production orders. But this risk extends beyond ESI protocols and discovery preservation/production. Inconsistent rulings on other legal issues inherent in this litigation could result in the type of "pretrial chaos" that Section 1407 was designed to prevent. *See, e.g.*, *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 492-93 (J.P.M.L. 1968).

Transfer is particularly appropriate here because these actions are still in the early stages. And even though many of the plaintiffs to date are represented by three law firms,[18] the Panel has recognized: "informal coordination and cooperation among the parties and courts" is not "sufficient to eliminate the potential for duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations." *In re: Generic Pharm. Pricing Antitrust Litig.*, No. MDL 2724, 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017).

---

privilege. While both courts permit the parties to move for alternative orders to be entered, each of these orders would serve as a guideline and starting place for negotiation for an alternate order. For a complex mass tort, this presents issues that would not arise in a single-event type of litigation. If the JPML considers that there could be dozens of contradictory local administrative orders or model orders, the variations in ESI Protocol Orders could lead to dissimilar productions of ESI in the related litigations, not to mention inefficiencies in the Rule 26(f) meet and confer processes. Alternatively, the parties could end up being held to an ESI Protocol that is not best suited to this litigation, simply because it was the first one entered in a certain court under that court's local rules.

Middle District of Tennessee's Administrative Order No. 174-1 is available at https://www.tnmd.uscourts.gov/content/default-standard-discovery-electronically-stored-information-e-discovery.

Northern District of Illinois Magistrate Judge Sunil R. Harjani's [Model] Stipulated Order for Discovery of Electronically Stored Information for Standard Litigation is available at https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/Harjani/Standard%20Litigation%20Proposed%20ESI%20Order.pdf.

[18] Upon information and belief, the number of law firms involved in related actions is expected to increase as new cases are initiated and interest among mass tort law firms grows.

### C. Consolidation or Coordination for Pretrial Proceedings Will Promote the Just and Efficient Conduct of the Actions

The Panel recognizes many factors in determining whether the "just and efficient conduct" of the actions will be advanced by transfer, including those discussed above and: (1) advancing judicial economy; and (2) reducing the burden on the parties by allowing division of workload among several attorneys. *See, e.g., In re: Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369 (J.P.M.L. 2010).

Under the current course, a minimum of twenty-four (24) different federal judges will be required to hear and rule on the various factual and legal issues. Scarce judicial resources would be drained by having multiple federal courts oversee actions that are essentially the same. Additionally, counsel for the parties would be required to appear in almost every part of the country, stretching attorney capacity and adding exceptional cost. Consolidation or coordination of the actions will promote the just and efficient conduct of the actions. Each related action likely will involve the same pretrial issues. *See, e.g., In re: Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("Transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues . . . and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.").

*** * ***

Movant-Plaintiff anticipates many more cases will be filed in numerous other district courts in the coming weeks and months. As this Panel has recently stated, "Although individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization . . . The alternative of allowing

the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings." *In re: Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017). Consolidation or coordination in one venue is therefore the best solution for these cases and any tag-along actions.

## II. THE PANEL SHOULD TRANSFER AND CONSOLIDATE THE ACTIONS IN THE NORTHERN DISTRICT OF ILLINOIS OR THE WESTERN DISTRICT OF MISSOURI.

In determining the most appropriate transferee forum, the Panel considers, among other factors, "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, . . . the experience, skill, and caseloads of available judges," where the first filed case is located, and whether the proposed district provides an accessible location. *See* Manual for Complex Litigation (Fourth) § 20.131 (2005); *In re: Educ. Testing Serv. Plt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004) (Panel found district appropriate where four of the thirteen actions were already pending in the district, the district provided an accessible, metropolitan location, the district had favorable caseload conditions, and the judge had experience managing multidistrict litigation); *In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L.1973) (Panel considered the conveniences of the parties and witnesses, location of relevant documents, stage of pretrial proceedings, and the status of civil dockets).

Although many district courts would be suited to oversee this litigation, the Northern District of Illinois, or alternatively the Western District of Missouri, as the transferee court is preferable and proper to "promote the just and efficient conduct of [the] actions" and advance the "convenience of parties and witnesses." 28 U.S.C. §1407.

**A. Northern District of Illinois, Judge Sara L. Ellis**

Movant-Plaintiff's case is pending in the Northern District of Illinois along with two additional related-actions.[19] The Northern District of Illinois is centrally located compared to East or West Coast courts and would permit convenient travel for all parties, witnesses, and counsel. The Northern District of Illinois is home to Chicago, Illinois, which is an accessible, metropolitan location with multiple airports. Although Meta's principal place of business is in California, the Northern District of Illinois is centrally located to Defendants' data centers where they store user information and connect the Facebook and Instagram products to the internet at large. Upon investigation, it appears that most of the relevant ESI will be housed in these data centers, providing easy access between these data centers and the Court.[20]

Additionally, the Northern District of Illinois has an exceptional track record of efficiently managing its docket. The median time from filing to disposition of a civil case in the Northern District of Illinois is a mere 7.4 months. The Northern District of Illinois also has the resources to provide an efficient disposition of these cases, both in terms of number of current MDL's pending (16) and amount of judges/size of the Clerk's office.[21] Finally, the Northern District of Illinois is tied for the greatest number of filed cases within a particular district. When combined with the other factors, the presence of multiple cases in this Court strongly favors transferring the litigation here.

---

[19] *See* Schedule of Actions attached as Exhibit "A" at pg. 5.

[20] Meta currently has 17 different data centers located throughout the United Stated, including Illinois, Iowa, Utah, North Carolina, Texas, Tennessee, Virginia, Alabama, Missouri, Idaho, New Mexico, Arizona, Ohio, Georgia, Oregon, and Nebraska. *See Meta Data Centers* (last visited July 30, 2022, 8:57 PM), https://datacenters.fb.com/#locations.

[21] *See Caseload Statistics Data Tables,* United States Courts, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

Movant-Plaintiff respectfully requests the Panel transfer and consolidate these actions to U.S. District Court Judge Sara L. Ellis of the Northern District of Illinois. Judge Ellis has served as District Judge in the Northern District of Illinois since 2013. Before her appointment, Judge Ellis engaged in private practice where she handled white collar criminal matters, complex civil litigation, and corporate counseling. During nine years on the bench, Judge Ellis has amassed significant experience overseeing complex litigation, having handed complex cases, including securities fraud and patent cases as well as consumer fraud and breach of contract class actions. She has presided over cases involving extensive expert testimony, managing both discovery and *Daubert* motions.[22] This proposed MDL is poised to become exceptionally large and complex in matters of case management, discovery, and cutting edge factual and legal issues. Thus, a veteran judge with significant experience in complex litigation would be beneficial. Judge Ellis's complex civil litigation experience as both a litigator and a judge make her an ideal choice. Judge Ellis runs an efficient docket and is not currently presiding over an MDL. Thus, Judge Ellis would be well-positioned to oversee this proposed MDL.

**B. Western District of Missouri, Judge Stephen R. Bough**

Alternatively, the Panel should select the Western District of Missouri for transfer of these actions. One related action is already pending in the Western District of Missouri.[23] The Western District of Missouri is also centrally located and would permit convenient travel for all parties, witnesses, and counsel for this national litigation. The Western District of Missouri is home to

---

[22] *See Westlaw Litigation Analytics Report for Honorable Sara L. Ellis*, Westlaw Edge (last visited July 30, 2022, 8:49 PM), https://1.next.westlaw.com/Analytics/Profiler?docGUID=I19773D701DD211B2850B0700720CE866&contentType=judge&originationContext=typeAhead&transitionType=LegalLitigation&contextData=(sc.Default)&analyticNavigation=none&pathAnalytic=%2FAnalytics%2FHome#/judge/I19773D701DD211B2850B0700720CE866/profile.

[23] *See* Schedule of Actions attached as Exhibit "A" at pg. 7.

Kansas City, Missouri, which is an accessible, metropolitan location with a new airport opening in the coming months.[24] Next, the Western District of Missouri is centrally located to Defendants' data centers. Additionally, the Western District of Missouri has a similarly impressive track record of efficiently managing its docket. The median time from filing to disposition of a civil case in the Western District of Missouri is just 7.8 months. The Western District of Missouri also has the resources to provide an efficient disposition of these cases, both in terms of number of current MDL's pending (6) and amount of judges/size of the Clerk's office.[25]

If the Panel selects the Western District of Missouri, Movant-Plaintiff respectfully requests the Panel assign this MDL to U.S. District Court Judge Stephen R. Bough. Judge Bough has served as District Judge in the Western District of Missouri since 2014. Before his appointment, Judge Bough practiced in private litigation, including owning his own firm, for nearly 15 years. During eight years serving the federal judiciary, Judge Bough has gained exceptional experience overseeing complex litigation. In fact, Judge Bough is currently presiding over *In re: Smitty's/Cam2 303 Tractor Hydraulic Fluid Marketing, Sales Practices, and Product Liability Litigation*, MDL 2963, which involves class actions coupled with an insurance coverage action. This MDL consists of only 11 cases and appears near to conclusion this fall. *See* Scheduling Order, *In Re Smitty's/CAM2 303 Tractor Hydraulic Fluid Marketing, Sales Practices, and Product Liability Litigation*, No. 4:20-md-2936 (W.D. Mo. Jul. 22, 2022). Judge Bough's MDL experience supports selection for overseeing the transfer and consolidation of these actions within the Western District of Missouri.

---

[24] *See New Single Terminal at Kansas City International Airport Lands in 2023*, VISIT KC (last visited July 30, 2022, 8:12 PM), https://www.visitkc.com/meetings/why-kc/meeting-articles/new-kci-single-terminal-lands-early-2023.

[25] *See Caseload Statistics Data Tables*, United States Courts, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

* * *

For the reasons set forth herein, consolidation is appropriate, and Judge Sara L. Ellis of the Northern District of Illinois is an excellent venue and judge to manage this litigation. Alternatively, Judge Stephen R. Bough of the Western District of Missouri would be another exemplary venue and judge to oversee these actions.

## CONCLUSION

Movant-Plaintiff respectfully requests that the Panel grant this motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer the Schedule of Actions, and any tag-along actions, to Judge Sara L. Ellis of the Northern District of Illinois or Judge Stephen R. Bough of the Western District of Missouri.

Respectfully submitted,

Dated: August 1, 2022

*/s/ Joseph G. VanZandt*
Joseph G. VanZandt
BEASLEY ALLEN CROW
METHVIN PORTIS & MILES, LLC
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
Facsimile: 334-954-7555
Joseph.VanZandt@BeasleyAllen.com

***Attorneys for Movant-Plaintiff***