**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:  SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION** | **MDL DOCKET NO.: 3047** |

**SNAP INC.'S RESPONSE TO PETITION FOR CONSOLIDATION
UNDER 28 U.S.C § 1407**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................4

III. ARGUMENT .........................................................................................................8

    A.  Multi-Defendant Cases Raise Complex and Distinct Factual Questions
       That Have Minimal Overlap with the Meta-Only Cases .........................................8

        1.  There Are Significant Distinctions Among the Platforms ...........................8

        2.  Multi-Defendant Cases Raise Factual and Legal Issues That Are
           Distinct From Single-Defendant Cases.......................................................12

        3.  Common Legal Issues Cannot Justify Centralization................................13

    B.  Consolidation Would Not Result in Greater Convenience or Efficiencies
       for the Multi-Defendant Cases Against Snap .......................................................14

    C.  The Panel Can Alternatively Consolidate the Claims In the Multi-
       Defendant Cases Solely Against the Meta Defendants.........................................17

    D.  If the Cases Are Consolidated, Snap Requests Transfer to the Eastern or
       Western Districts of Kentucky, or in the Alternative, the Middle District of
       Florida or the Northern District of Georgia .........................................................18

IV.  CONCLUSION....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*In re ABA L. Sch. Accreditation Litig.*,
    325 F. Supp. 3d 1377 (J.P.M.L. 2018)......................................................................14

*In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*,
    709 F. Supp. 2d 1375 (J.P.M.L. 2010)....................................................................16

*In re Aredia & Zometa Prods. Liab. Litig.*,
    429 F. Supp. 2d 1371 (J.P.M.L. 2006)....................................................................17

*In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*,
    804 F. Supp. 2d 1376 (J.P.M.L. 2011)......................................................................4

*In re Children's Pers. Care Prods. Liab. Litig.*,
    655 F. Supp. 2d 1365 (J.P.M.L. 2009)..................................................................2, 9

*In re CP4 Fuel Pump Mktg., Sales Pracs., and Prods. Liab. Litig.*,
    412 F. Supp. 3d 1365 (J.P.M.L. 2019)....................................................................14

*In re Credit Card Payment Prot. Plan Mktg. & Sales Pracs. Litig.*,
    753 F. Supp. 2d 1375 (J.P.M.L. 2010)......................................................................9

*In re Fresh Dairy Prods. Antitrust Litig. (No. III)*,
    190 F. Supp. 3d 1353 (J.P.M.L. 2016)....................................................................16

*In re Hotel Indus. Sex Trafficking Litig.*,
    433 F. Supp. 3d 1353 (J.P.M.L. 2020)....................................................................14

*In re Invokana (Canagliflozin) Prods. Liab. Litig.*,
    223 F. Supp. 3d 1345 (J.P.M.L. 2016)....................................................................17

*In re OxyElite Pro & Jack3d Prod. Liab. Litig. (No. II)*,
    65 F. Supp. 3d 1412 (J.P.M.L. 2014)................................................................11, 16

*In re Paycheck Prot. Program (PPP) Agent Fees Litig.*
    481 F. Supp. 3d 1335 (J.P.M.L. 2020) (ECF 356)................................................15

*In re Penn Cent. Sec. Litig.*,
    325 F. Supp. 309 (J.P.M.L. 1971)............................................................................9

*In re Pharmacy Benefit Plan Adms. Pricing Litig.*,
    206 F.Supp.2d 1362 (J.P.M.L. 2002)........................................................................8

*In re Prevagen Prod. Mktg. & Sales Pracs. Litig.*,
    283 F. Supp. 3d 1379 (J.P.M.L. 2017)....................................................................16

*In re Secondary Ticket Mkt. Refund Litig.*,
  481 F. Supp. 3d 1345 (J.P.M.L. 2020)...................................................................15

*In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*,
  571 F. Supp. 2d 1367 (J.P.M.L. 2008)...................................................................12

*In re Spray Polyurethane Foam Insulation Prods. Liab. Litig.*,
  949 F. Supp. 2d 1364 (J.P.M.L. 2013)...................................................2, 9, 14, 15

*In re Victoria's Secret Undergarments/Intimate Apparel Prods. Liab. Litig.*,
  626 F. Supp. 2d 1349 (J.P.M.L. 2009).....................................................................9

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
  883 F. Supp. 2d 1350 (J.P.M.L. 2012)............................................................3, 9, 13

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.*,
  844 F.Supp.2d 1377 (J.P.M.L. 2012)................................................................10, 11

**CASES - OTHER**

*M.C. v. Meta Platforms, Inc. et al.*,
  No. 3:22-cv-04529-KAW .......................................................................5, 6, 7, 11

*Murden v. Meta Platforms, Inc.*,
  3:22-cv-01511-RJD (S.D. Ill. July 13, 2022) ........................................................10

*Rodriguez v. Meta Platforms, Inc.*,
  3:22-cv-00401 (N.D. Cal. Jan. 20, 2022)...........................................7, 8, 11, 12, 13

*Wuest v. Meta Platforms, Inc.*,
  No. 4:22-cv-04283-JSW ...........................................................................................6

**FEDERAL STATUTES**

28 U.S.C. § 1407....................................................................................8, 14, 17

Communications Decency Act, 47 U.S.C. § 230........................................................13

**OTHER AUTHORITIES**

Ann. Manual Complex Lit. § 20.14 (4th ed. 2022)....................................................16

# I. <u>INTRODUCTION</u>

Plaintiff Brianna Murden brings this Petition for Consolidation (the "Petition") of cases involving allegations of harm to minors resulting from their use of the loosely defined category of "social media."  Snap Inc. ("Snap") is not a defendant in the lawsuit brought by Ms. Murden. Nor is Snap a defendant in the large majority of lawsuits currently under consideration for consolidation.  Ms. Murden's lawsuit, like the nearly two-thirds of the 47 cases under consideration, names only Meta Platforms, Inc., the owner of Facebook and Instagram, and associated entities ("Meta" or "the Meta Defendants"), as the sole defendants.  Snapchat, the camera and communications app operated by Snap, is a literal footnote in Ms. Murden's consolidation request, mentioned once in a footnote in the consolidation petition and once in a footnote in the accompanying brief.  *See* ECF 1 at 1 n.1; ECF 1-1 at 3 n. 15.

Ms. Murden's relegation of Snap to a footnote is telling.  Snap is a defendant in only a fraction (16) of the cases under consideration for consolidation, and in all of those cases, other companies including Meta, TikTok, and/or Google have also been named as defendants (the "multi-defendant" cases).  And even in these cases where Snap is a defendant, the allegations involving Snapchat are fundamentally different from those involving the services operated by the Meta Defendants.  This stands to reason, because Snapchat's features are fundamentally different from that of the other social media apps at issue in this litigation.  Facebook and Instagram, operated by Meta, open to a refreshable and continuous feed of third-party content; their primary use is the broadcast publication of third-party content to a wide audience, including users who do not know the poster and who may have found the user through searching the app (as both allow for publicly searchable profiles).  Snapchat, by contrast, opens to a camera; this reflects its primary purpose of facilitating direct communication between individuals or small groups of people who already know each other (more akin to direct messaging or a group chat).

Snapchat's signature feature is its ephemeral messaging default, in which messages are deleted shortly after being viewed. This feature was designed to replicate real-life, in person conversations and give people a way to communicate electronically without the pressure that everything they say and do online would be part of a public and permanent record. In addition, Facebook and Instagram both have "likes" and publicly viewable "like counts"; Snapchat, by contrast, does not have such "like counts" or other vanity metrics for its core messaging service. And unlike Facebook and Instagram, Snap does not allow for publicly searchable profiles for minors. The other platforms that, like Snap, have been sued in a small minority of cases (TikTok and YouTube) likewise have their own distinguishing characteristics.

Because Meta, Snap, TikTok and Google offer completely different services and interact with users in fundamentally different ways, there will be significant factual differences between the cases focused on one defendant (e.g., the Meta-only cases) and the multi-defendant cases in which Snap is a defendant, making consolidation inappropriate. *See, e.g.*, *In re Spray Polyurethane Foam Insulation Prods. Liab. Litig.*, 949 F. Supp. 2d 1364, 1364-65 (J.P.M.L. 2013) (concluding centralization was inappropriate in a case involving different products manufactured by different defendants given the individualized nature of the facts); *In re Children's Pers. Care Prods. Liab. Litig.*, 655 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009) (concluding centralization was inappropriate in case where only one manufacturer was a named defendant in all actions and the products at issue, although all children's products, required individualized factfinding).

First, the theories of "addiction" asserted against the various defendants differ substantially. Whereas the allegations against Snap focus on notifications of third-party messages sent to users and rewards users may receive for sending messages on the platform, the

allegations against Instagram and Facebook, for example, focus on these platforms' continuous and refreshable content feeds, public "likes" and follower counts, and alleged publicly searchable profiles for minors.[1]  There is nothing to be gained by injecting analysis of distinct platforms that have entirely different system architectures and uses into an MDL focused on whether Meta's products (Facebook and Instagram) may be held liable for the plaintiffs' alleged harm.  *E.g.*, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (centralization of cases involving "unique products—and defendant-specific issues (such as the different product designs, manufacturing processes, regulatory histories, and company documents and witnesses)" unjustified by some common factual issues).

Moreover, by their very nature, multi-defendant cases raise their own set of distinct issues that are absent from the Meta-only cases.  Courts overseeing the multi-defendant cases will need to consider the comparatively much more complex interaction between different platforms that allegedly cause addiction in different ways and the ways that each individual user interacted with the various platforms.  Further, consolidation of the multi-defendant cases with the Meta-only cases will add unneeded procedural difficulties and litigation burdens upon the MDL court and the parties.  For example, given that each of the defendants are competitors, complicated protective orders will need to be negotiated and adopted in order to facilitate discovery in any MDL.  And such consolidation would place additional burdens on parties like Snap, requiring Snap to monitor and participate in a range of pre-trial matters in the Meta-only cases, including discovery, hearings, and procedural matters, due to their potential implications for Snap's cases.  There is no need to add this inefficiency to an MDL focused on Meta,

---

[1] Snap by no means accepts plaintiffs' claim that either Instagram or Facebook are addictive or otherwise harmful; rather, the point is that plaintiffs' theory of addictiveness as to Instagram and Facebook is fundamentally differently than their theory of addictiveness as to Snapchat.

especially given that most of the plaintiff law firms in the proposed MDL have not brought claims against Snap.

Moreover, alternatives to MDL consolidation of the multi-defendant cases at this time would be equally or more efficient; the cases where multiple platform operators are defendants have nearly all been led by a single law firm, and Snap is similarly represented by a single law firm.  Coordination of discovery and case scheduling outside the MDL is thus equally feasible, and there is no need to move to the "last resort" of centralization.  *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).  And although Snap requests that the cases involving Snap as a defendant be remanded in their entirety, to the extent the Panel believes it would be efficient to coordinate all claims against the Meta Defendants, the Panel can separate and consolidate just those claims in an MDL, while remanding the claims against Snap (and the other non-Meta Defendants).

Snap takes no position on the consolidation of cases in which Meta is the sole defendant.  But to the extent that the Panel orders coordination of any of the cases involving Snap, Snap agrees with Meta that the Eastern or Western Districts of Kentucky, or in the alternative, the Middle District of Florida or the Northern District of Georgia, are the most appropriate venues and joins Meta's request that any consolidated cases be transferred there.

## II. <u>BACKGROUND</u>

This Petition involves a request to consolidate 47 different lawsuits pending across the country, most of which do not name Snap as a defendant.[2]  Plaintiff Brianna Murden, who brings this petition for consolidation, has sued the Meta Defendants.  And like the plaintiffs in 29 other

---

[2] The original petition included 29 cases.  ECF 1-2.  As of 6 p.m. EST on the date of this filing 18 further cases have been designated as potential tag-along actions.  *See* ECF 1-2, 4-1, 12-1, 18-1, 18-2, 27-1, 31-1, 33-1, 34-1.

cases under consideration for consolidation, Ms. Murden has sued ***only*** the Meta Defendants. This group of plaintiffs alleges only that the minors at issue used Meta-owned platforms.  By contrast, the 16 cases naming Snap as a defendant all include other social media companies beyond Snapchat and all include allegations that the minor involved used platforms other than Snapchat, including Instagram, TikTok, and YouTube.[3]

Although these lawsuits all name one or more so-called "social media" platforms and all involve an amorphous theory of "addiction" to "social media," there are important differences among the cases and parties—including the different Defendants in the minority of cases that involve Defendants other than Meta.

First, as the allegations of the complaints at issue reflect, the applications (or "apps") that the plaintiffs have grouped together and defined as "social media" are in fact different in significant respects.  *See, e.g., M.C. v. Meta Platforms, Inc. et al.*, No. 3:22-cv-04529-KAW ¶ 22 (Aug. 5, 2022) (ECF 1) ("*M.C.* Compl.") ("Meta, YouTube, Snap, and TikTok have designed each of their products to contain unique product features . . . .").

- **Facebook** and **Instagram** are broadcast social media platforms used to share images and text posts with followers.  These platforms publicize the number of friends or followers that a user has as well as how many people have "liked" or commented on a user's posts.  Users engage with both platforms primarily through a refreshable feed of third-party content based on algorithmic recommendations.  Both Facebook Instagram also allow publicly searchable profiles for minors.  *See, e.g., M.C.*

---

[3] 15 of the 17 multi-defendant cases have been filed by the SMVLC (including all but two of the cases against Snap).  *See* Declaration of Jonathan H. Blavin ("Blavin Decl.") ¶ 3 & n.1.

Compl. ¶¶ 77, 81, 92, 99; *Wuest v. Meta Platforms, Inc.*, No. 4:22-cv-04283-JSW ¶ 249 (July 25, 2022) (ECF 1) ("*Wuest* Compl.").

- **TikTok**, distributed by defendants **TikTok Inc.** and **ByteDance Inc.,** is an app that "hosts a variety of short-form user videos" which are created, shared, and viewed by third-party users, and which are shown through a refreshable feed based on algorithmic recommendation, and which users can also like. *M.C.* Compl. ¶¶ 158, 160-61.

- **YouTube**, distributed by defendant **Google**, is used to share long-form videos. Plaintiffs allege that engagement with YouTube is driven primarily by algorithmic content recommendations based on videos already watched by users. *Wuest* Compl. ¶ 126.

- **Snapchat** is a messaging app used to communicate between real life friends. Snapchat is "most famous" for its core service, a person-to-person messaging experience. *M.C.* Compl. ¶ 137. Snapchat does not have likes for messages sent using its core messaging functionality. Like conversations in real life, messages sent on Snapchat are intended to disappear after being seen by the intended recipient. *Id.* Although plaintiffs allege that Snapchat also has a feed where users can choose to share content for global distribution, Snapchat does not open to this feed and, as plaintiffs acknowledge, Snapchat does not employ content-amplifying algorithms for its core messaging experience, and there is no "content feed" for the messaging experience. Snapchat also does not permit publicly searchable profiles at all for underage users. *C.f. Rodriguez v. Meta Platforms, Inc.*, 3:22-cv-00401 ¶ 30-31 (N.D.

Cal. Jan. 20, 2022) (*Rodriguez* Compl.) (describing Instagram's public profiles feature).

These platforms are all independently owned, operated, designed and distributed.  Nor is there any allegation that the platforms worked together on the design or operation of their respective services.  To the contrary, all four platforms are competitors in the market for digital advertising.

Second, the way users interact with each platform is different—meaning that plaintiffs have offered different theories for how and why a user could allegedly become "addicted" to the various apps.  For Facebook and Instagram, for instance, plaintiffs' theory of addiction is based primarily on the refreshable feed of algorithmically recommended content, as well as on signals of social recognition such as "likes." *M.C.* Compl. ¶¶ 77, 84-85.  The allegations of addiction as to Snapchat, by contrast, appear primarily based on notifications of third-party messages sent to users and rewards users may receive for sending messages to other users on the platform.  *Id.* ¶¶ 146-47.

Another difference concerns the nature of the plaintiffs' claims.  Each case involves an individual plaintiff who alleges distinct allegations of purported addiction to specific platforms and harm, and whose engagement with each of the various platforms differ from case to case.  The factual allegations in these cases vary widely; some, tragically, involve allegations that the minor committed suicide, while others do not.  Some involve allegations of bullying, while others involve allegations of criminal conduct by third parties.  While these differences exist for all cases under consideration for MDL treatment, these differences are particularly acute for the multi-defendant cases.  In the multi-defendant cases, should the claims proceed past the motion to dismiss stage, the fact-finder will need to determine how much time each individual user spent

7

on each app, the kinds of interactions that each user had on each app, and the specific app features a particular user engaged with.

The cases under consideration for consolidation are all in their infancy.  None has proceeded to discovery, and though a Rule 12 motion has been filed in one case,  *Rodriguez v. Meta Platforms, Inc.*, that motion has not been decided, with the case being stayed for the duration of the pendency of this Petition prior to any opposition being filed.

### III. <u>ARGUMENT</u>

The multi-defendant cases where Snap is a defendant do not meet the criteria for transfer under 28 U.S.C. § 1407 because (1) "one or more common questions of fact" are not pending in different districts; (2) transfer would not serve "the convenience of the parties and witnesses;" and (3) transfer will not "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The Petition should be denied as to the multi-defendant cases involving Snap.

### A. <u>Multi-Defendant Cases Raise Complex and Distinct Factual Questions That Have Minimal Overlap with the Meta-Only Cases</u>

#### 1. **There Are Significant Distinctions Among the Platforms**

Consolidation between the Meta-only cases and the multi-defendant cases involving Snap is unwarranted because there are substantial factual differences among the platforms.

When unique questions of fact predominate over common questions of fact, centralization under § 1407 is not warranted.  *See, e.g.*, *In re Pharmacy Benefit Plan Adms. Pricing Litig.*, 206 F.Supp.2d 1362, 1363 (J.P.M.L. 2002).  This is true even if actions share some common legal questions and factual questions.  *Id.*  Where any efficiencies that might result from transfer are "outweighed by the need for separate treatment of the major portion" of cases, transfer is not justified.  *In re Penn Cent. Sec. Litig.*, 325 F. Supp. 309, 311 (J.P.M.L. 1971) ("[F]ull development of these cases may require investigation of factual areas covered in

[the others]. Whatever efficiencies might result in . . . limited areas from transfer, however, would be outweighed by the need for separate treatment of the major portions of these cases.").

In cases involving distinct products and features, the Panel has time and again denied consolidation on the basis that the cases lacked sufficient factual similarity.  The Panel has repeatedly found that allegations that supposedly similar products are defective are not sufficient to meet the requirement of common factual issues.  *See, e.g.*, *In re Children's Pers. Care Prods.*, 655 F. Supp. 2d at 1366 (concluding "common issues, however, are overshadowed by the non-common ones" where "ten different baby products with differing formulations are involved in these actions" and "[o]nly J & J is named as a defendant in all actions"); *In re Victoria's Secret Undergarments/Intimate Apparel Prods. Liab. Litig.*, 626 F. Supp. 2d 1349, 1350 (J.P.M.L. 2009) ("While each action alleges that Victoria's Secret undergarments are defective, it appears that this common allegation may be overshadowed by factual issues unique to each action. Victoria's Secret sells a vast array of brands, styles, and colors of undergarments, and they are manufactured by various factories with components from various suppliers."); *In re Spray*, 949 F. Supp. 2d at 1364-65  ("individualized facts concerning the chemical composition of the different products, the training and practices of each installer, and the circumstances of installation at each residence will predominate over the common factual issues alleged by plaintiffs*"*); *In re Credit Card Payment Prot. Plan Mktg. & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010) (centralization not warranted where "the actions involve allegations against different credit card issuers regarding different products"); *In re Watson Fentanyl Patch*, 883 F. Supp. 2d at 1351 ("centralization could complicate these matters, as defendants may need to erect complicated confidentiality barriers, since they are business competitors").  As the Panel has noted, "we are typically hesitant to centralize litigation against multiple, competing

defendants which marketed, manufactured and sold similar products."  *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F.Supp.2d 1377, 1378 (J.P.M.L. 2012) (denying centralization of 13 product liability actions involving different plumbing products).

Here, for example, the Petition fails to identify *any* factual similarities between the claims against Snap and the cases solely brought against the Meta Defendants.  Instead, the Petition only identifies factual similarities among the cases against Meta, repeatedly referring to alleged similarities between Facebook and Instagram.  *E.g.*, ECF 1-1 at 5.  Snap appears only in one footnote in the brief accompanying the Petition, which conclusorily asserts that the complaints naming Snap "allege similar facts and injuries associated with adolescent use of these platforms," without any accompanying description of what those similarities are.  ECF 1-1 at 3 n. 15.

And a comparison of Ms. Murden's allegations solely against Meta with the claims in other lawsuits involving Snap shows that there is little similarity in the claims against Snap as compared to the claims brought solely against the Meta Defendants.  For example, Plaintiff Murden alleges that Meta's platforms create addiction because of design features such as "likes." *Murden v. Meta Platforms, Inc.*, 3:22-cv-01511-RJD ¶ 35 (S.D. Ill. July 13, 2022) (ECF 1) ("*Murden* Compl.").  She alleges that she "began engaging in addictive and problematic use of the platform due to" feeds on Meta's platforms that are algorithmically designed to amplify more engaging and allegedly objectionable content.  *Id.* ¶ 63.  Both of these features, by contrast, do not exist in Snapchat's central messaging service, which is the focus of plaintiffs' theory of addiction as to Snapchat, and which has neither "likes" nor a continuous and refreshable

scrolling newsfeed with algorithmic content recommendations.[4]  Instead, Snapchat is primarily a messaging tool between people who must choose to follow each other to transmit messages to one another.  *Rodriguez* Compl. ¶ 37.  In other words, Snapchat and the Meta apps work in fundamentally different ways.  They are not, for example, like chemically similar drugs that treat the same disease and have similar side-effects but are manufactured by different companies.

The cases here are even less susceptible to consolidated treatment than the cases in *Yellow Brass Plumbing, Children's Personal Care Products*, or other cases where this Panel has denied consolidation.  Other than plaintiffs' allegations that each defendant offers some kind of "social media" app, the differences in how the platforms work and how users interact with them dwarf any similarities.  *E.g. Rodriguez* Compl. ¶ 8. (noting the platforms' "unique product features").  Further, Snapchat is designed and distributed completely independently from any of the other social media platforms at issue in other cases involved in this Petition.  Discovery and evidence about the design, features, and functionality of Snapchat would have little relevance to defending or prosecuting any of the claims solely involving the Meta Defendants.  There are also no allegations of coordinated action among the different platforms (which are competitors).  Nor are there allegations related to leaks of Snap documents concerning "social media" addiction, or any congressional investigations into Snapchat, as there are against the Meta Defendants.  *Murden* Compl. ¶ 14; *Rodriguez* Compl. ¶¶ 36, 50; *In re OxyElite Pro & Jack3d Prod. Liab. Litig. (No. II)*, 65 F. Supp. 3d 1412, 1413 (J.P.M.L. 2014) ("centralization was not warranted

---

[4] Although plaintiffs point to a Snapchat feed that displays content created by other users globally, they acknowledge that Snapchat is "most famous" for its messaging experience, *M.C.* Compl. ¶ 137, and the allegations of addiction relating to Snapchat arise from this messaging experience.  *E.g. id.* ¶ 256 (alleging M.B. was addicted to using "snap streaks," which is a feature in the messaging experience indicating the number of consecutive days that two users have messaged one another); *Rodriguez* Compl. ¶¶ 129-30 (allegations of harmful messages with third parties on Snapchat).

because the involved actions focused on different formulations of the products, alleged different health risks, and alleged distinct regulatory responses to the DMAA and aegeline products at issue").

### 2.     Multi-Defendant Cases Raise Factual and Legal Issues That Are Distinct From Single-Defendant Cases

The multi-defendant cases are also likely to involve distinct issues of causation and liability as compared to the Meta-only cases, which counsels against consolidation.  *See, e.g. In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*, 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (denying centralization where the "proponents of centralization have not convinced us that the efficiencies that might be gained by centralization would not be overwhelmed by the multiple individualized issues (including ones of liability and causation)").  For example, because Snapchat is different, the messaging functionality and features by which it purportedly causes addiction and therefore harm (which Snap vigorously disputes) are distinct and would be based on different evidence than in the 30 cases where Meta is the sole defendant.  As noted, the features of Facebook and Instagram that Plaintiff Murden highlights in her complaint as "addictive"—e.g., the never-ending feed of algorithmically recommended content, as well as signals of social recognition such as "likes"— are absent from Snapchat's central messaging service.  By contrast, the allegations of addiction as to Snapchat appear primarily to be based on notifications of third-party messages sent to users and rewards users receive for sending messages to other users on the platform.  *See supra* pp 6-7.

Moreover, the multi-defendant cases in which the plaintiff uses *several* "social media" apps—which all the cases involving Snap are—are even more likely to involve distinct issues of causation from the Meta-only cases, and from one another, given the individualized facts relating to each plaintiff's use of the apps, including how much time the plaintiffs spent on each app and

how they interacted with the app.  They are also likely to raise distinct issues of causation and liability (including potentially issues of comparative fault) from the cases in which the plaintiff is brings claims involving only *one* social media platform, as is true in 30 of the cases under consideration for consolidation involving solely Meta.  For instance, in the *Rodriguez* Complaint, the plaintiff alleged that her daughter met predators on other platforms, and that those predators then used Snapchat to message her daughter on a few occasions.  *See Rodriguez* Compl. ¶¶ 112, 122, 128-133.  These kinds of allegations present issues of factual and proximate causation that are simply not going to be present in the Meta-only cases.  Thus, even though Meta may be a defendant in all of the cases under consideration in which Snap is also a defendant, these multi-defendant cases involving Snap raise both distinct factual issues concerning additional platforms and features that are not at issue in the Meta-only cases, and also much more complex and highly individualized factual and legal issues concerning alleged "addiction," causation, and liability, that are absent in the Meta-only cases.

In short, the factual issues will be distinct for the different platforms, and fact and expert discovery will focus on different issues as to each company, counseling strongly in favor of denying consolidation as to the multi-defendant cases involving Snap from the Meta-only cases. Plaintiffs' use of the conclusory label of "social media addiction" is insufficient to justify centralization.  *See In re Watson Fentanyl Patch*, 883 F. Supp. 2d at 1351 (allegations relating to "postmortem redistribution and the bare fact that all plaintiffs overdosed on fentanyl" insufficient to justify centralization).

### 3.    Common Legal Issues Cannot Justify Centralization

Given these myriad factual differences, proponents of centralization cannot cite merely to common legal issues, such as the question of federal preemption under Section 230 of the Communications Decency Act, to justify centralization.  Rather, the Panel repeatedly has held

that "common legal questions are insufficient to satisfy Section 1407's requirement of common factual questions." *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020); *see also In re ABA L. Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1379 (J.P.M.L. 2018) (concluding that centralization was not justified solely based on common legal questions; noting that "efficiencies through centralized treatment of disputed legal questions, merely to avoid different federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization" (citation omitted)).  Centralization of the multi-defendant cases involving Snap is thus not warranted by any common legal questions.

### B.    Consolidation Would Not Result in Greater Convenience or Efficiencies for the Multi-Defendant Cases Against Snap

Consolidation of the multi-defendant cases involving Snap with the Meta-only cases also is not justified at this stage because it will generate additional complications and burdens in any MDL, and alternatives to consolidation exist that would be equally if not more efficient.

*First*, consolidation of the multi-defendant cases with the Meta-only cases will add unneeded procedural complexities and litigation burdens upon the MDL court and the parties. As each of the defendants are competitors, complicated protective orders will need to be negotiated and adopted in order to facilitate discovery in any MDL—a burden that does not exist in an MDL where Meta is the sole defendant.  *E.g., In re: Spray*, 949 F. Supp. 2d at 1364-65 ("placing direct competitor manufacturer defendants into the same litigation would require protecting trade secret and confidential information from disclosure to all parties and complicate case management").  Centralization would also require Snap (and the other defendants) to monitor and attend a large number of pre-trial matters in the Meta-only cases, including, e.g., court hearings and depositions (for instance, depositions of the Meta-only plaintiffs or percipient witnesses) to protect Snap's interests.  *In re CP4 Fuel Pump Mktg., Sales Pracs., and Prods.*

14

*Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (denying transfer where plaintiffs sued three competing car companies because an MDL "likely would result in significant inefficiencies and delay" including "the possible need for separate discovery and motion tracks"). Efficiency thus counsels against consolidating the Meta-only cases with the multi-defendant cases. *See In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (centralizing cases only as to StubHub and concluding that an industry-wide MDL would "complicate pretrial proceedings more than it would streamline them").

 *Second*, informal coordination is practicable because nearly all of the multi-defendant cases involving Snap have been led by a single law firm (SMVLC), and Snap (like the other non-Meta defendants) is also represented by a single law firm in all cases. *See* Blavin Decl. ¶ 3. To date, counsel for Snap and plaintiffs' counsel in these cases have been able to coordinate issues relating to preservation and case scheduling across multiple cases in different jurisdictions, and Snap believes it will be able to coordinate effectively with plaintiffs' counsel going forward. *Id.* By contrast, a number of firms are leading the cases against Meta, most of which have not sued Snap. Centralization would force Snap to negotiate protective orders, electronic discovery protocols, and fact discovery with many firms and plaintiffs who have no claims against Snap, creating greater inefficiencies. Thus, effective informal coordination outside of the MDL is practicable and preferable. *See In re Paycheck Prot. Program (PPP) Agent Fees Litig.* 481 F. Supp. 3d 1335, 1338 (J.P.M.L. 2020) (ECF 356) (denying centralization, noting "[i]nformal coordination also appears to be practicable across districts, as just four groups of plaintiffs' counsel represent plaintiffs in 50 of the 62 actions in this litigation and the most frequently-named defendants appear to be represented by national counsel"); *In re Spray*, 949 F. Supp. 2d

at1364-65 ("voluntary coordination among the parties (many of whom are represented by the same counsel) and the involved judges is a preferable alternative to centralization").

*Second*, only 17 of the 47 cases are multi-defendant cases, while the large majority involve solely Meta.  These cases are all at the very earliest stages of the litigation, with only a single case proceeding to the filing of a motion to dismiss.  *See* Blavin Decl. ¶ 2-3.  The relatively small number of cases makes informal coordination even more feasible.  *In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying centralization where "most, if not all, defendants are named in only a minority of actions; and several defendants are named in but a handful of actions"); *In re Fresh Dairy Prods. Antitrust Litig. (No. III)*, 190 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) (denying centralization where "informal coordination and cooperation appeared practicable, especially in light of the small number of actions"); *In re Prevagen Prod. Mktg. & Sales Pracs. Litig.*, 283 F. Supp. 3d 1379, 1380 (J.P.M.L. 2017) ("The small number of actions suggests that cooperation and informal coordination by the involved courts and counsel should be feasible.").

*Third*, alternatives to consolidation exist in district courts, including coordination by different courts, the entry of stipulated discovery orders, and similar.  *See* Ann. Manual Complex Lit. § 20.14 (4th ed. 2022) ("Even when related cases pending in different districts cannot be transferred to a single district, judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts.").  In fact, 10 of the 16 cases against Snap are pending in the Northern District of California, and cooperation among judges in that district is even more feasible.  *In re OxyElite*, 65 F. Supp. 3d at 1413 ("voluntary coordination among the parties and the involved judges was preferable to centralization" where "the District of Hawaii actions (which focused on aegeline) were being coordinated in that district").

Because informal alternatives to consolidation exist, and because the district courts in which these cases are pending are more than capable of coordinating informally should needs arise, transfer and consolidation of the multi-defendant cases would not serve the interests of convenience and efficiency.

### C.   The Panel Can Alternatively Consolidate the Claims In the Multi-Defendant Cases Solely Against the Meta Defendants

The relevant authorities and efficiencies counsel in favor of remanding each of the multi-defendant cases in their entirety.  But should the Panel wish to consolidate all of claims against the Meta Defendants while remanding the claims against Snap and the other non-Meta defendants in these cases, it has the authority to do so.  The Panel has the authority to "separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded."  28 U.S.C. § 1407.  In cases involving different products manufactured by different defendants, this Panel has historically exercised that power to separate the claims against some defendants and consolidating them while remanding them as to other defendants.  *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) (rejecting bid to centralize entire class of drugs, separating and remanding claims against non-Janssen defendants in a "combination case"); *In re Aredia & Zometa Prods. Liab. Litig.*, 429 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2006) (separating and remanding claims in three actions brought against Merck and transferring for inclusion in the MDL only claims against Novartis).  The Panel may exercise that power if it believes that the claims against Meta in the cases in which Snap is a defendant warrant consolidation.

D.    **If the Cases Are Consolidated, Snap Requests Transfer to the Eastern or Western Districts of Kentucky, or in the Alternative, the Middle District of Florida or the Northern District of Georgia**

Snap believes that consolidation of the cases against it is unwarranted.  But should the Panel disagree, Snap joins Meta's request to transfer the cases to the Eastern or Western Districts of Kentucky, or in the alternative, the Middle District of Florida or the Northern District of Georgia, for the reasons articulated by Meta.

## IV. CONCLUSION

Snap therefore respectfully opposes the request to consolidate the cases in which it is a defendant.  Should the Panel be inclined to consolidate the cases, Snap requests transfer to the Eastern or Western Districts of Kentucky, or in the alternative, the Middle District of Florida or the Northern District of Georgia.

Respectfully Submitted,                              Dated:         8/30/2022

By: */s/ Jonathan H. Blavin*

JONATHAN H. BLAVIN
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94110
Telephone: (415) 512-4000
Facsimile: (415) 512-4001
Email: jonathan.blavin@mto.com

ROSE LEDA EHLER
LAURA M. LOPEZ
ARIEL TESHUVA
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702
Email: rose.ehler@mto.com
            laura.lopez@mto.com
            ariel.teshuva@mto.com

LAUREN BELL
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington D.C., 20001
Telephone: (202) 220-1125
Email: lauren.bell@mto.com
Attorneys for SNAP INC.