BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCT LIABILITY LITIGATION | MDL DOCKET NO. 3047 |

**MOVANT-PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

All Plaintiffs and Defendant Meta agree that consolidation and transfer of the actions is appropriate. The parties dispute only two issues: (1) whether the Panel should include Defendants TikTok, Snap, and YouTube[1] (collectively, "Opposing Defendants") in the MDL, and (2) which transferee court is most appropriate.

First, Opposing Defendants attempt to alarm the Panel with hyperbole, claiming Plaintiffs request an "industry wide" MDL that would "crush" the federal judiciary. (*See* TikTok Resp., Doc. 47 at 5). But even Opposing Defendants acknowledge they "operate only some" of the countless number of social media products, and "there are many more" products which are not subject to any lawsuit nor included in this proposed MDL. (*See id.*).[2] To be clear: Movant-Plaintiff is ***not*** proposing an "industry wide" MDL. Movant-Plaintiff seeks an MDL centered on adolescent product liability claims related to Meta's Facebook and Instagram products, with Meta as the

---

[1] Movant-Plaintiff references the Defendant groups by the shortform names designated in their corresponding responses. (*See* Docs. 46-48).

[2] The only Defendants proposed by Meta and Plaintiffs in the MDL are Meta, TikTok, Snapchat, and YouTube. Their platforms are the most used by Plaintiffs and constitute several of the top social media platforms used by adolescents. *See* Emily Vogels, Risa Gelles-Watnick, & Navid Massarat, *Teens, Social Media and Technology 2022,* Pew Research Center (August 10, 2022), https://www.pewresearch.org/internet/2022/08/10/teens-social-media-and-technology-2022/).

anchor Defendant. Only actions with Meta as the Defendant or a co-Defendant should be included.[3]

But because some existing and future Plaintiffs simultaneously used and were injured by both Meta and the Opposing Defendants' products, all containing similar addictive design features, inclusion of the Opposing Defendants in actions where Meta is a co-Defendant is appropriate under Section 1407 and supported by this Panel's jurisprudence. Opposing Defendants suggestion of informal coordination or claim splitting would lead to an untold number of judges and courts overseeing multiple claims from the same Plaintiffs with indeterminate damages apportionment. This in turn would result in inefficiencies, inconsistencies, and a lack of coordination among federal courts that the multi-district litigation process is designed to address.

Second, while the parties have suggested several transferee courts, the Northern District of Illinois is best suited for this proposed MDL. Meta's entire-district view ignores the actual capacities of Judge Sara L. Ellis of the Northern District of Illinois, or alternatively, Judge Stephen R. Bough of the Western District of Missouri. Further, Meta's criticism that Movant-Plaintiffs' suggested judges do not have a case assigned to them is a smoke screen. All the actions are in their infancy—no judge in the country has heard or ruled on any substantive motion and most cases are currently stayed. At this point, the assignment of an action does not give any judge an advantage or disadvantage. The Northern District of Illinois remains the most convenient and well-equipped venue for this proposed MDL.

---

[3] Defendant Meta and two responding Plaintiffs tagged as related actions *E.W. v. YouTube, LLC*, No. 3:22-cv-04528-TLT (N.D. Cal. filed Aug. 5, 2022); *Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor v. TikTok, Inc. et al.*, No. 2:22-cv-1849 (E.D.P.A. filed May 12, 2022); and *J.M. and D.M. v. ByteDance Inc., et al.*, No. 3:22-cv-4533-MMC (N.D. Cal. filed Aug. 5, 2022). These actions should not be included in the MDL as they do not contain anchor Defendant Meta. Further, the *Anderson* matter concerns the "TikTok Blackout Challenge," which includes different factual and substantive issues.

## BACKGROUND

Since Movant-Plaintiff filed her Motion to Transfer on August 1, 2022, 38 new cases alleging adolescent injuries from Defendants' social media products have been tagged as related actions. (*See* Updated Schedule of Actions, attached as **Exhibit A**). In total, 66 cases are currently pending in 30 federal districts across the country, with numerous additional filings anticipated. All Plaintiffs that filed a response (6 total) agree that consolidation and transfer of the actions is warranted. Responding Plaintiffs largely supported or did not oppose the Northern District of Illinois or, alternatively, the Western District of Missouri but also proposed the following venues: Southern District of Ohio, Eastern District of Pennsylvania, District of Utah, Northern District of California, and District of Oregon.

Defendant Meta also agreed that the Panel should consolidate and transfer the actions and include all Defendants. Meta suggested the Eastern or Western District of Kentucky as the transferee court. As alternatives, Meta proposed the Middle District of Florida and the Northern District of Georgia. Defendants TikTok, Snap, and YouTube opposed the Motion to Transfer but supported the transferee courts Meta suggested should the Panel order consolidation and transfer.

## ARGUMENT

**I.   THE MDL SHOULD FEATURE ONLY CASES WITH META, INCLUDING THOSE IN WHICH TIKTOK, SNAP, AND/OR YOUTUBE ARE CO-DEFENDANTS.**

To date, 18 filed cases include a combination of Defendants Meta, TikTok, Snap, and YouTube. Despite highly similar factual allegations as to each Defendant and Plaintiffs alleging simultaneous use of Defendants' products and injury, Opposing Defendants offer several unpersuasive reasons why the Panel should not centralize and transfer the actions with more than one Defendant. Opposing Defendants rely on cases that do not involve situations where multiple

3

products used by individual plaintiffs act to result in similar injuries, as are the facts here. In short, Movant-Plaintiff's Motion to Transfer and the supporting responses establish that consolidation and transfer under Section 1407 is warranted and superior to available alternatives.

### A. Plaintiffs Allege Common Issues of Fact Across All Defendants.

Opposing Defendants attempt to excise themselves from this proposed MDL by noting that their products are not identical to Meta's. For example, Defendant YouTube asserts broadly that the "claims against YouTube raise unique questions of fact that would predominate over any issues common to Meta or the other defendants." (*See* YouTube Resp., Doc. 46 at 1). TikTok similarly asserts, without support, that its features do not significantly overlap those of other social media products. (*See* TikTok Resp., Doc. 47 at 10). Additionally, Snap argues that its "central messaging service" does not include a renewable feed or algorithmically pushed content, while acknowledging (only in a footnote) that Snapchat indeed has these features. (*See* Snap Resp., Doc. 48 at 15 n.4).

Setting aside that the Opposing Defendants largely do not elaborate on how Plaintiffs' claims against them are unique, this conflates the requirements of Section 1407 by asserting that Plaintiffs must plead cookie-cutter factual allegations against all Defendants' products. But this Panel has stated time and time again that "[t]ransfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer. Also, the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core[.]" *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008); *see also In re Kugel Mesh Hernia Patch Prod. Liab. Litig.*, 493 F. Supp. 2d 1371, 1373 (J.P.M.L. 2007) (same).

Plaintiffs' allegations against multiple Defendants contain sufficient common factual issues because all allege the same harm and that Defendants' products contributed to that harm through a similar mechanism. Indeed, the complaints involving multiple Defendants include allegations common to *all* Defendants:

- Defendants intentionally designed their products to maximize adolescent users' screen time using complex algorithms and marketed these products to adolescents;
- None of the Defendants' products contain meaningful age-verification requirements;
- Each of the Defendants' products relies on an unlimited scrolling feature—either in their main feed or in additional feeds such as "Discover" feeds—to provide a constant stream of content to minor users without employing safety features that would identify problematic use and halt the feed;
- Each of the Defendants' products uses unpredictable and uncertain rewards—designed to exploit minors users' limited impulse control—in order to incentivize greater use of Defendants' products; and
- Defendants failed to warn users (and their parents or guardians) adequately of the risk of addiction and other harms to children and adolescents.

Plaintiffs also allege that Defendants' products resulted in common injuries. (*See* Motion to Transfer, Doc. 1 at 4; Plaintiff Doffing *et al.*, Resp., Doc. 38 at 2-3; Meta Resp., Doc. 21 at 11-12).

Opposing Defendants' cited cases are inapposite because they do not feature plaintiffs alleging common injuries from multiple products or a single Defendant common to all actions. For example, TikTok relies on *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*, which involved ten putative class actions, and no defendants supported centralization. 412 F.

Supp. 3d 1365, 1367 (J.P.M.L. 2019). Additionally, each case involved one manufacturer – the only overlap was that they shared the same defective fuel pump. *Id.* Here, however, all proposed MDL actions by Movant-Plaintiff share Defendant Meta; all Plaintiffs were harmed by the same types of product design features; and each individual Plaintiff alleges simultaneous injuries as the result of multiple Defendants' defective products.

TikTok also relies on *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.,* where there was minimal support for MDL consolidation among both plaintiffs and defendants. 544 F. Supp. 3d 1375, 1376. (J.P.M.L. 2021). Centralization was opposed by plaintiffs in 39 of 86 actions and by all the defendants, and there was an organizational alternative in progress. *Id.* The Panel concluded, "[w]e believe it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation. [If such efforts fail], the parties at that time may pursue a more focused request for centralization." *Id.* at 1378. Here, all Plaintiffs and Meta seek an MDL, and as Meta highlighted, the parties' efforts to coordinate informally across the cases have not been fruitful. (*See* Meta Resp., Doc. 21 at 13).

Snap further argues in opposition that common legal issues alone cannot justify centralization. (*See* Snap's Resp., Doc. 48 at 17-18). This argument rests exclusively on the decisions in *In re ABA Law School Accreditation Litig.*, 325 F. Supp. 3d 1377, 1379 (J.P.M.L. 2018), and *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020), both of which involve factual underpinnings materially distinguishable from those at issue here. In *In Re ABA*, only three lawsuits had been filed, all by common counsel, with no tag-along actions and later tag-alongs were unlikely. 325 F. Supp. 3d at 1378. Concerned with the dearth of actions, the Panel concluded that centralization was not warranted because, "[w]here only a few actions are involved, the proponent of centralization bears a heavier burden to demonstrate that

6

centralization is appropriate." *Id*. Similarly unavailing, in *In re Sex Trafficking*, "[t]he vast majority of actions involve[d] different [defendants]," with "no common or predominant defendant across all actions," thus indicating a lack of common questions of fact. 433 F. Supp. 3d at 1355-56. Here, in contrast, 66 lawsuits have been filed by 13 law firms in 30 federal courts, with an obvious, predominant Defendant across the actions: Meta. Over the coming weeks and months, significantly more lawsuits filed against these Defendants are anticipated.

More analogous Panel decisions include *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017); *In re: Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, 224 F. Supp. 3d 1330 (J.P.M.L. 2016); and *In re: Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F. Supp. 2d 1359 (J.P.M.L. 2012). In each of these matters, the Panel consolidated cases against competing defendants when the plaintiffs, like here, alleged simultaneous use of multiple products causing overlapping injuries.

### B. Including All Defendants Will Convenience the Parties and Promote the Just and Efficient Conduct of the Actions.

Opposing Defendants contend consolidation would prolong the pretrial proceedings. Not so. Defendants make no secret of their plan to file nearly identical motions to dismiss for all the actions. (*See* Meta Resp., Doc. 21 at 15-18). In fact, Defendants Meta, Snap, and TikTok have already filed a joint motion to dismiss in one matter raising the exact legal issues outlined in Meta's response.[4] (*See id.*; *see also* Plaintiff Doffing *et al.*, Resp., Doc. 38 at 7). If consolidated, these pretrial motions would be centralized, as opposed to dozens of judges ruling on similar (if not the same) pretrial motions potentially resulting in inconsistent rulings and inefficiencies.

---

[4] *See Rodriguez v. Meta Platforms, Inc.*, No. 3:22-cv-00401-JD (N.D. Cal. filed July 25, 2022) (ECF No. 67).

Opposing Defendants also raise the "complexity" of negotiating a protective order amongst the parties, (*see* TikTok Resp., Doc. 47 at 14-15; Snap Resp., Doc. 48 at 18), while ignoring that the alternative would be dozens (if not more) of individual protective orders regarding the same claims. Moreover, MDLs often feature multiple defendants, and yet the parties consistently enter appropriate protective orders. *See e.g., In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379. Ultimately, centralization would expedite—not prolong—pretrial proceedings and convenience the parties.

Opposing Defendants also claim discovery will be too individualized and complex for a transferee court to oversee. The complexity of the discovery contemplated is one of the strongest supporting considerations of centralization. The parties would benefit from a uniform discovery process, as opposed to multiple different parameters across an untold number of courts. In addition, discovery will feature many overlapping issues regarding similar product features, development and testing of Defendants' products, internal knowledge of Defendants' products effects on adolescents, and additional necessary and overlapping third-party discovery. (*See* Plaintiff Doffing *et al.* Resp., Doc. 38 at 6). As this Panel frequently points out, "[t]he transferee judge has the discretion to address those issues through the use of appropriate pretrial devices, such as separate tracks for discovery and motion practice." *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.*, 268 F. Supp. 3d 1356, 1359 (J.P.M.L. 2017). Those mechanisms can be applied here, alleviating any concern of an inefficient discovery process.

### C. **Opposing Defendants' Suggestion of Informal Coordination or Claim Splitting Is Not Feasible**.

Opposing Defendants suggest inferior and impractical alternatives to consolidation. Their first suggestion is to exclude cases with more than one Defendant and allow such cases to "informally coordinate." (*See* TikTok Resp., Doc. 47 at 17-19; Snap Resp., Doc. 48 at 19-21). As

Meta and responding Plaintiffs outlined, excluding multi-Defendant actions from the MDL "would result in needless duplication of effort and potentially inconsistent rulings on Meta-specific issues[.]" (Meta Resp., Doc. 21 at 22; *see also* Plaintiff Doffing *et al.* Resp., Doc. 38 at 6-8). Likewise, Plaintiffs would be forced to engage with Meta and Opposing Defendants in courts across the country while also litigating the same claims against Meta in the MDL. As the Panel has recognized, "[t]he alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379. Informal coordination would become even more unmanageable as the number of cases continue to grow.

Alternatively, Opposing Defendants ask the Panel to split Plaintiffs' claims by Defendant and litigate the actions across multiple courts. While the Panel occasionally employs this approach, it would not benefit the parties and claims here. In cases where multiple Defendants are named, Plaintiffs allege simultaneous use and simultaneous injury caused by the respective Defendants' products through similar design features. As Meta correctly argues, "[s]everance would also present significant administrative challenges around the proper apportionment of any damages where a single plaintiff used multiple apps." (*See* Meta Resp., Doc. 21 at 22). It would be entirely impractical to split the actions when the common facts across Defendants' products buttress the claims. The Panel has rarely decided to split plaintiffs' simultaneous injuries against common Defendants across multiple courts. *See, e.g., In re: American Med. Sys.,* , 844 F. Supp. 2d at 1361 (Ordering centralization where "a number of these actions are brought by plaintiffs who were implanted with multiple products made by multiple manufacturers."). Claim splitting and severance would neither convenience the parties nor promote the just and efficient conduct of these actions.

## II. THE MOST SUITABLE TRANSFEREE COURT IS THE NORTHERN DISTRICT OF ILLINOIS.

Movant-Plaintiff's proposal to transfer the matters to the Northern District of Illinois, or alternatively the Western District of Missouri, is the best course forward. The Northern District of Illinois provides a centralized and convenient location for all parties and counsel.[5] This district stands out for its record of efficiently managing its docket and its experience in overseeing MDLs. The Western District of Missouri features similar positive attributes as the Northern District of Illinois. Both districts provide more advantages than Meta's proposal.

Meta attempts to undermine Movant-Plaintiff's recommendations by citing to various caseload statistics. (*See* Meta Resp., Doc. 21 at 24-25). Closer inspection of these statistics reveals that the districts proposed by Plaintiffs are more appropriate venues. For instance, Meta provides only the average caseloads of the districts proposed by Plaintiffs, ignoring the actual caseloads of the judges Plaintiffs have recommended. Specifically, the present caseloads of Judge Ellis and Judge Bough are 332 and 155 respectively – below the district-wide caseload averages cited by Meta.[6] Likewise, Judge Ellis does not currently preside over an MDL, and Judge Bough oversees one MDL with presently only eleven pending cases.[7] More importantly, both districts have demonstrated the capability to handle multi-district litigation. For example, the Northern District of Illinois capably and efficiently managed *In re: Testosterone Replacement Therapy Products Liability Litigation*, MDL-2545, which involved over 7,000 actions (the large majority have been

---

[5] Currently, 15 of the 66 filed cases are pending in the Northern District of Illinois.

[6] *Civil Cases in District Court,* TRAC Reports (last visited Sept 1, 2022), https://tracfed.syr.edu/judges/interp/civjdglist.html?nosgrpsel=all&distric2=.

[7] *Distribution of Pending MDL Dockets by District*, United States Judicial Panel on Multidistrict Litigation (last visited Sept. 1, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-15-2022.pdf.

resolved or dismissed).[8] The Western District of Missouri also has experience handling multi-district litigation, having been assigned over twenty MDLs.[9]

Meta's suggested transferee courts of the Eastern or Western District of Kentucky are less suitable. As the Westwood Plaintiffs note, neither Kentucky venue offers direct flights to the California Bay Area, where multiple defense and plaintiff counsel reside, as well as many Defendants' employees and witnesses. (*See* Plaintiff Westwood Resp., Doc. 57 at 3). Additionally, a party's refusal to waive *Lexecon* in an MDL setting can substantially impact the makeup and representativeness of bellwether pool cases. Here, a party's refusal to waive *Lexecon* in a Kentucky-based MDL would have a more profound negative impact on the availability of bellwether cases. Due to Kentucky's one-year statute of limitations, a bellwether pool limited to Kentucky resident plaintiffs would potentially handcuff the transferee judge's ability to employ a robust bellwether program.

Meta's alternative venues are also less suitable than Movant-Plaintiff's proposed transferee courts. The Middle District of Florida and Northern District of Georgia are less centralized to the parties and attorneys and would be far less convenient and more burdensome. Both districts carry a much smaller number of filed cases[10], and neither district has a significant connection to the parties or attorneys.

Other responding Plaintiffs suggest the following alternative transferee courts: Southern District of Ohio, Eastern District of Pennsylvania, Northern District of California, District of

---

[8] *Id*.

[9] *Id.*; *MDLs Terminated Through September 30, 2021,* United States Judicial Panel on Multidistrict Litigation (last visited Sept. 1, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20FY%202021%20Report%20Cumulative%20Terminated%20MDLs.pdf).

[10] Currently, only four cases are pending in the Middle District of Florida and one case in the Northern District of Georgia.

Oregon, and District of Utah. While Movant-Plaintiff stands by the Northern District of Illinois or, alternatively, the Western District of Missouri as the best-situated transferee districts, Movant-Plaintiff would support transfer to the Southern District of Ohio, Eastern District of Pennsylvania, or District of Utah.

## CONCLUSION

Meta and all Plaintiffs agree that the Panel should consolidate and transfer the actions. The Panel should also consolidate cases where TikTok, Snap, and YouTube are co-Defendants with Meta. The Northern District of Illinois serves as an ideal transferee court for this proposed MDL. Therefore, Movant-Plaintiff respectfully requests that the Panel grant her motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer the Updated Schedule of Actions, and the tag-along actions, to Judge Sara L. Ellis of the Northern District of Illinois or Judge Stephen R. Bough of the Western District of Missouri.

Respectfully submitted,    Dated: September 6, 2022

*/s/ Joseph G. VanZandt*
Joseph G. VanZandt
BEASLEY ALLEN CROW
METHVIN PORTIS & MILES, LLC
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
Facsimile: 334-954-7555
Joseph.VanZandt@BeasleyAllen.com

**Attorney for Movant-Plaintiff**