BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE SOCIAL MEDIA ADOLESCENT ADDICTION/ PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br><br>*Youngers, et al. v. Meta Platforms, Inc., et al.; No. 1:22-cv-00608* | MDL NO. 3047 |

BRIEF IN SUPPORT OF MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO – 1)

  In compliance with Rule 7.1(f) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiffs Joleen Youngers, as personal representative of the wrongful death estate of L.K., a deceased minor child, Arthur Karr, and Angela Karr, file this Brief in Support of their Motion to Vacate Conditional Transfer Order (CTO – 1) as it relates to *Youngers, et al. v. Meta Platforms, Inc., et al.; No. 1:22-cv-00608* (the "*Youngers* Case").

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ……………………………………………………………...… ii

**PROCEDURAL HISTORY** ….…………………………………………………………….... 1

**ARGUMENT** ……………………………………………………………...…………………. 2

  A.  The *Youngers* Case was wrongfully removed. ………………………………….…… 2

  B.  The claims against the New Mexico Defendants cannot and should not be severed. ….. 7

  C.  The Panel should allow the New Mexico District Court to complete its consideration of Plaintiffs' Motion to Remand and to decide that Motion. ……………………..…… 8

**REQUEST FOR RELIEF** ……………………………………………………………....…. 9

**SIGNATURE** ……………………………………………………………………….………9

## TABLE OF AUTHORITIES

**Cases:**

*Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467 (1974) ………………………………………….. 4

*Brown v. Endo Pharm., Inc.*, 38 F. Supp. 3d 1312 (S.D. Ala. 2014) ……………………….. 8

*Flores-Duenas v. Briones*, No. CIV 13-0660 JB/CG, 2013 WL 6503537
 (D.N.M. Dec. 1, 2013) ……………………………………………….……… 3, 4

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004) ………………………………. 7

*Halliburton v. Johnson & Johnson*, 983 F. Supp. 2d 1355 (W.D. Okla. 2013),
 *aff'd sub nom. Parson v. Johnson & Johnson*, 749 F.3d 879 ……………………………. 3

*Hampton v. Holper*, 319 F. Supp. 3d 1204 (D. Nev. 2018) …………………………...……… 8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346
 (J.P.M.L. 2001) …………………………………………………………………...………… 8

*In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52
 (J.P.M.L. 2012) ……………………………………………………………...………… 8, 9

*In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 650608
 (S.D. Fla. Feb. 19, 2021) ………………………………………………………………….. 7,8

*Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732 (10th Cir. 2010) …………………… 2

*Loughlin v. United States*, 364 U.S. App. D.C. 132, 393 F.3d 155 (2004) …………………... 2

*Parson v. Johnson & Johnson*, 749 F.3d 879 (10th Cir. 2014) …………………..…….. 2, 3

*Ramirez v. San Miguel Hosp. Corp.,* No. 1:21-cv-1080-DHU-SCY, 2022 WL 632841
 (D.N.M. Mar. 4, 2022) …………………………………………………….……….. 3

**Statutes:**

28 U.S.C. § 1332 …………………………………………………………………………..….. 2

28 U.S.C. § 1407 ……………………………………………………………………………….. 8

**Other Authority:**

Fed. R. 20(a)(2) …………………………………………………………………...………… 4

N.M. R. Civ. P. 1-020 ………………………………………………………………………… 4

N.M. Civ. UJI 13-305 ……………………………………………………………………….. 5

N.M. Civ. UJI 13- 1801A ……………………………………………………………………….. 6

UJI 13-1830 ……………………………………………………………………………….. 6

N.M. Civ. UJI 13-2220 ........................................................................................................... 5

N.M. Civ. UJI 14-1424 ………………………………………………………………… 5

**PROCEDURAL HISTORY**

On July 6, 2022, Plaintiffs Joleen Youngers, as personal representative of the wrongful death estate of L.K., a deceased minor child, Arthur Karr, and Angela Karr filed their Plaintiffs' Original Complaint for Wrongful Death, Loss of Consortium, and Punitive Damages (the "Complaint") in the First Judicial District, Santa Fe County, New Mexico. Document 1-1 at p. 5.[1] In the Complaint, Plaintiffs' alleged claims for relief against Meta Platforms, Inc., F/K/A Facebook, Inc., Snap, Inc., ByteDance, Inc., TikTok, Inc., (collectively, Meta Platforms, Inc., F/K/A Facebook, Inc., Snap, Inc., ByteDance, Inc., and TikTok, Inc. are referred to herein as the "Social Media Defendants") Skyler Stanford, Saul Rodarte, and Adam Anaya (collectively, Skyler Stanford, Saul Rodarte, and Adam Anaya are referred to herein as the "New Mexico Defendants"). Document 1-1 at pp. 5- 65. On August 15, 2022, Defendant Meta Platforms, Inc. ("Meta") filed its Notice of Removal by which the *Youngers* Case was removed to The United States District Court for the District of New Mexico (the "New Mexico District Court"). Document 1.

The sole basis for removal asserted in the Notice of Removal is that the New Mexico citizenship of the New Mexico defendants should be ignored under the doctrine of "procedural misjoinder." Document 1 at pp. 7-11. Alternatively, Meta requested the New Mexico District Court to attempt to create for itself jurisdiction where none is conferred by the Constitution or statute by severing the claims against the New Mexico Defendants if the joinder of the New Mexico Defendants is found to have been proper. Document 1 at pp. 11-13.

On August 19, 2022, Plaintiffs filed Plaintiffs' Motion to Remand and Memorandum of Law in support of Plaintiffs' Motion to Remand with the New Mexico District Court. Documents 8 & 9. On August 29, 2022, Meta filed Defendant Meta Platforms, Inc.'s Opposition to Plaintiffs'

---

[1] Citations to "Document" herein are to the filings in the *Younger Case* as numbered and available on PACER. The page numbering in such citations are to the page numbers assigned by PACER.

1

Motion to Remand. Document 23. On September 2, 2022, Plaintiffs filed Plaintiffs' Reply in Further Support of Motion to Remand, Document 26, and their Notice of Completion of Briefing. Document 27.

On October 11, 2022, this Panel issued Conditional Transfer Order (CTO-1) which identified the *Youngers* Case as a tag-along action. ECF 122.[2] On October 17, 2022, Plaintiffs filed their Notice of Opposition to Conditional Transfer Order (CTO-1), ECF 124, and on October 18, 2022, Plaintiffs filed their Amended Notice of Opposition to Conditional Transfer Order (CTO-1). ECF 126. The amendment was to correct a clerical error in the Proof of Service.

## ARGUMENT

### A. The *Youngers* Case was wrongfully removed.

"[S]ubject matter jurisdiction is, of necessity, the first issue for an Article III court." *Loughlin v. United States*, 364 U.S. App. D.C. 132, 147, 393 F.3d 155, 170 (2004) (internal quotation marks omitted). There is no federal jurisdiction over the *Youngers* Case and Meta's removal of the case was groundless. The sole basis for federal jurisdiction alleged by Meta is diversity of citizenship under 28 U.S.C. § 1332. There is, however, no diversity jurisdiction because all the New Mexico Defendants are New Mexico citizens, a fact which is not disputed by Meta.

To justify removing the *Youngers* Case, Meta argues that the citizenship of the New Mexico Defendants should be ignored under "procedural misjoinder," a doctrine which the Tenth Circuit has not adopted. *See Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010) (declining to adopt the procedural misjoinder doctrine); *Parson v. Johnson & Johnson*, 749 F.3d 879, 893 (10th Cir. 2014) (declining to review the existence of diversity jurisdiction

---

[2] Citations to "ECF" are to the filings in this MDL No. 3047 as numbered and available on PACER.

2

because "consideration of this issue would require us to determine whether to recognize the doctrine of 'fraudulent misjoinder' . . . a rule that the defendants admit has not yet been adopted within this circuit") (citations omitted); *Flores-Duenas v. Briones*, No. CIV 13-0660 JB/CG, 2013 WL 6503537, at *24–27 (D.N.M. Dec. 1, 2013) (outlining the lack of clarity in the Tenth Circuit and elsewhere, discussing the arguments in favor and against adoption of the doctrine, deciding to adopt it in certain circumstances, and determining there was no misjoinder of parties); *Halliburton v. Johnson & Johnson*, 983 F. Supp. 2d 1355, 1359 (W.D. Okla. 2013), *aff'd sub nom. Parson v. Johnson & Johnson*, 749 F.3d 879 ("Given this criticism and the lack of guidance by the Tenth Circuit, the court declines to adopt the procedural misjoinder doctrine and to extend it to the plaintiffs' claims at issue in these actions."). Meta's argument that procedural misjoinder should be considered by the New Mexico District Court is based largely on the unpublished opinion *Flores-Duenas v. Briones*, No. CIV 13-0660 JB/CG, 2013 WL 6503537 (D.N.M. Dec. 1, 2013), yet in *Flores-Duenas* the Court rejected "a wholesale adoption of the procedural misjoinder doctrine." *Ramirez v. San Miguel Hosp. Corp.,* No. 1:21-cv-1080-DHU-SCY, 2022 WL 632841, at *6 (D.N.M. Mar. 4, 2022) (discussing the limited nature of the procedural misjoinder doctrine as applied in *Flores-Duenas*).

Even if the Tenth Circuit had adopted the procedural misjoinder doctrine, the New Mexico Defendants were properly joined in the *Youngers* Case. The New Mexico and federal rules governing the permissive joinder of parties are extremely broad, setting forth only "minimal requirements." *Flores-Duenas*, 2013 WL 6503537 at * 37 (quotations omitted). These rules allow a plaintiff to join defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants

will arise in the action." Fed. R. 20(a)(2); N.M. R. Civ. P. 1-020 (same). In allowing permissive joinder, these rules promote trial convenience, expedite the final determination of disputes, and prevent duplicative and potentially inconsistent lawsuits. They are "drafted broadly to empower parties, within only liberal limits that fairness imposes, to control [the private and public costs of redundant litigation] through litigation structure. *Flores-Duenas*, 2013 WL 6503537 at \* 37.

"As early as 1926, the Supreme Court admonished the courts that the 'transaction or occurrence' standard was to be read broadly" to achieve these goals. *Id.* "More recently, the Supreme Court reemphasized this point when . . . it stated: '[T]his Court held that 'transaction' is a word of flexible meaning which may comprehend a series of occurrences if they have a logical connection.'" *Id.* (quoting *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974)). Thus, neither the "transaction" or "common-question requirements" are "rigid tests"; instead, they are "flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." *Id.* at \*118 (citations omitted).

Under the minimal requirements of the state and federal joinder rules, joinder of the New Mexico Defendants and Social Media Defendants is proper. First, Plaintiffs allege that each Defendant's wrongful conduct was part of the same series of transaction or occurrences that contributed to L.K.'s mental illness and caused her suicide. Certainly, Plaintiffs do not assert that the New Mexico Defendants and the Social Media Defendants worked in concert, but concerted action is not required. Plaintiffs allege that the Social Media Defendants' negligence and defective products led to L.K.'s addiction and mental illness. The New Mexico Defendants then took advantage of L.K.'s addiction and mental illness—and used Social Media Defendants' products—

to harm L.K., further compounding her addiction and mental illness. This wrongful conduct ultimately produced a single foreseeable result: L.K.'s death. New Mexico law is clear that the acts, omissions, or products of multiple, unrelated defendants can work in combination to produce one injury—here, L.K.'s death. "An act or omission is a 'cause' of injury if it contributes to bringing about the injury. It need not be the only explanation for the injury, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a 'cause,' the act or omission, nonetheless, must be reasonably connected as a significant link to the injury." N.M. Civ. UJI 13-305; *see also* N.M. Civ. UJI 14-1424 (setting forth the same standard in the context of a products liability claim). *See* Document 1-1, at ¶¶ 93, 96–98, 100–03. Despite Meta's argument to the contrary, ECF No. 1, at p. 9, Plaintiffs adequately allege that the acts of the New Mexico and Social Media Defendants were symbiotic, simultaneous, and causative; they were all part of the same series of transactions or occurrences, related to the use and consequences of the use of the Social Media Defendants' products, that led L.K. to suffer from severe anxiety and depression and to take her life.

Additionally, Plaintiffs' claims against all Defendants share numerous common questions of law and fact. For example, the Social Media Defendants will undoubtedly argue at trial that the New Mexico Defendants are at fault, either partially or entirely, and the New Mexico Defendants will argue the opposite. Both may argue L.K. was at fault, and they may even argue Ar. K. and An. K. are at fault. In the end, a jury will be asked to assess the evidence against each Defendant, to determine liability, and to apportion responsibility. *See* N.M. Civ. UJI 13-2220 (sample special verdict form instructing the jury to "[c]ompare the negligence of the following persons and find a percentage for each"; "[t]he total of the percentages must equal 100%, but the percentage for any one or more of the persons named may be zero if you find that such person was not negligent or

that any negligence on the part of such person was not a cause of damage"). Requiring separate juries in duplicative trials to consider the liability of each Defendant and assign fault would be inefficient, and it would invite inconsistent verdicts. This is precisely the result the federal and state joinder rules were crafted to avoid.

Similarly, fact questions related to L.K's addiction to the Social Media Defendants' products and how her addiction made her susceptible to harm by the New Mexico Defendants, including the credibility of related fact and expert witnesses, will pervade Plaintiffs' claims against each Defendant. And there are numerous shared questions related to damages. For example, as to each, a jury will be asked to make determinations such as the amount of pain and suffering L.K. suffered, and to consider economic evidence in deciding her potential lost earning capacity and the value of her life. N.M. Civ. UJI 13-1830 (instructing the jury to "fix the amount of money which you deem fair and just for the life of [L.K.], including in your award compensation" for numerous "elements of damages proved by the evidence"). A jury will be asked to decide whether Ar. K. and An. K. are entitled to "recover compensation for damage" to their relationship with L.K., and whether their relationship was sufficiently "mutually dependent," looking at their "emotional reliance on one another" and the "particulars of their day-to-day relationship." N.M. Civ. UJI 13-1801A. Again, asking multiple juries to hear the same witness testimony and to evaluate the same damages in multiple trials would invite waste and potentially inconsistent verdicts.

Thus, common questions of both fact and law abound in this case. For purposes of the Court's joinder analysis, the fact that L.K. was addicted to the Social Media Defendants' products, which caused her mental illness, is parallel to a case in which a minor became addicted to heroin provided to her by heroin dealers, which caused her to suffer from mental illness. In such a case, it would be clear that her addiction and mental illness made her susceptible to abuse by

other defendants, and it would be clear that addiction, mental illness, and trauma can combine to cause a single injury—death by suicide. And in such a case, the heroin dealers and abusers could be joined in a single action; the dealers and abusers would argue the other was at fault and played a larger role in her death, and a jury would apportion fault between them. The same logic applies here. The joinder of the Social Media Defendants and the New Mexico Defendants is permissible and appropriate, and it will promote trial convenience, expedite the final determination of Plaintiffs' claims, and prevent duplicative lawsuits.

### B. The claims against the New Mexico Defendants cannot and should not be severed.

"[I]n the alternative to finding procedural misjoinder," Meta argues that a federal court may simply "perfect diversity jurisdiction" by severing the New Mexico Defendants from this action, returning them to the First Judicial District Court, and keeping the remaining Defendants here. ECF 1, at 12. This argument is circular, illogical, and, again, contrary to the removal statutes. A federal court lacking subject-matter jurisdiction over a removed state-court action cannot—and should not—manufacture that jurisdiction through the misuse of federal severance procedure.

"It has long been the case that the jurisdiction of the Court depends upon the state of things at the time of the action brought. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004) (internal citations and quotations omitted). Given this fundamental time-of-filing rule, a lack of complete diversity at the time of filing deprives a district court of subject-matter jurisdiction and necessitates immediate remand. Accordingly, federal courts routinely reject requests to manufacture jurisdiction absent at removal by severing non-diverse defendants: "When a court lacks jurisdiction over a case in the first instance, invoking Rule 21 to manufacture jurisdiction leads to confounding circular logic by which a removing

7

defendant asks the court to act without jurisdiction as a means to create jurisdiction." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 650608, at *3 (S.D. Fla. Feb. 19, 2021) (internal indications of quotations omitted); *see also Hampton v. Holper*, 319 F. Supp. 3d 1204, 1214 (D. Nev. 2018) ("Courts have flatly rejected this alternative approach . . . by which a removing defendant asks the court to act without jurisdiction as a means to create jurisdiction.") (internal indications of quotations omitted); *Brown v. Endo Pharm., Inc.*, 38 F. Supp. 3d 1312, 1326 (S.D. Ala. 2014) ("The fundamental problem is that Endo essentially is asking this Court to employ the procedural device of severance not to 'retain' jurisdiction, but to manufacture federal jurisdiction that did not exist at the moment when Endo removed this case.").

**C. The Panel should allow the New Mexico District Court to complete its consideration of Plaintiffs' Motion to Remand and to decide that Motion.**

Plaintiffs are aware that the fact that the *Youngers* Case was wrongly removed does not make transfer of the *Youngers* Case under 28 U.S.C. § 1407 *per se* improper and that the pending Motion to Remand could be heard by the transferee court. *See, e.g. In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001). Nevertheless, nothing requires the Panel to reward Meta for wrongfully removing the *Youngers* Case by forcing Plaintiffs to endure needless delay in having their Motion to Remand decided. The briefing on Plaintiffs' Motion to Remand was completed on September 2, 2022. Document 27. At this point there is no possible "overall convenience of the parties and witnesses" to be derived from transfer of the *Youngers* Case before the New Mexico District Court can decide the pending Motion to Remand. *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012) (in deciding issues of transfer under Section 1407, the panel "look[s] to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in

isolation." (quotation omitted). There is no judicial economy to be obtained by wasting the work the New Mexico District Court has already performed in considering Plaintiffs' Motion to Remand and forcing both Plaintiffs and Meta to re-brief the remand issues before the transferee court. Under these circumstances, the Panel should allow the New Mexico District Court to consider and decide Plaintiffs' Motion to Remand.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request that the Panel vacate CTO-1 as it applies to *Youngers, et al. v. Meta Platforms, Inc., et al.*; No. 1:22-cv-00608.

WHEREFORE, Plaintiffs pray that the Panel grant their Motion to Vacate Conditional Transfer Order (CTO-1) and for all other just relief.

Dated: November 1, 2022.                    Respectfully submitted,


*/s/ Anthony K Bruster*
Anthony K. Bruster
Texas Bar No. 24036280
680 N. Carroll Ave., Suite 110
Southlake, TX 76092
Phone: (817) 601-9564
Fax: (817) 796-2929
Email: akbruster@brusterpllc.com

*Attorney for Plaintiffs*

9