**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION / PERSONAL INJURY PRODUCTS LIABILITY LITIGATION** | **MDL No. 3047**<br><br>This Document Relates To:<br><br>*Hartford Casualty Insurance Company et al. v. Instagram, LLC et al.*, No. 24−01422 (D. Del.) |

**BRIEF IN OPPOSITION TO MOTIONS TO VACATE CONDITIONAL TRANSFER
ORDER NO. 37 (CTO-37)**

## TABLE OF CONTENTS

I.      INTRODUCTION..............................................................................................1

II.     RELEVANT FACTUAL BACKGROUND......................................................3

    A.      The Social Media Cases Are Consolidated Into The MDL. ...................3

    B.      Meta Seeks Coverage From Its Insurers For The Social Media Cases..................4

    C.      Hartford Preemptively Sues Meta Based On Facts At Issue In The MDL. ...........5

    D.      The MDL Already Includes Meta's Coverage Action Against Its Insurers. ...........8

III.    LEGAL STANDARD ........................................................................................8

IV.     ARGUMENT ...................................................................................................10

    A.      This Panel Can and Should Transfer the Hartford Action Despite Pendency
           of Insurers' Motions To Remand........................................................................10

    B.      Factors Under This Panel's Consideration Uniformly Favor Transfer. ................12

        1.      *The Hartford Action Shares Common Questions Of Fact With The
               MDL.* ......................................................................................................12

        2.      *Transfer Would Promote Efficiency And Convenience.* ...........................14

        3.      *Transfer Would Promote Justice.* ............................................................17

    C.      This Panel Should Not Delay Transfer................................................................18

V.      CONCLUSION ...............................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ........................................................................................11

*Buss v. Superior Ct.*, 16 Cal. 4th 35 (1997) .........................................................................................13

*Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966) ...................................................................................13

*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076 (1993) ...........................................................14

*In re 21st Century Prods. Inc. "Thrilsphere" Cont. Litig.*, 448 F. Supp. 271 (J.P.M.L. 1978) .............9

*In re Acacia Media Technologies Corp. Patent Litigation*, 360 F. Supp. 2d 1377 (J.P.M.L. 2005) ...........9

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812 (J.P.M.L. 1973) ...........18

*In re American Home Mortg. Securities Litigation*, 528 F. Supp. 2d 1376 (J.P.M.L. 2007) ...............18

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d 1375 (J.P.M.L. 2023) ...................9, 11, 19

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2873, 2021 WL 755083 (J.P.M.L. Feb. 4, 2021) .........4

*In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415 (J.P.M.L. 2023) ...............................9

*In re Chinese-Manufactured Drywall Products Liability Litigation* 2010 WL 11747797 (J.P.M.L. 2010) ...............16

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 227 F. Supp. 2d 1389 (J.P.M.L. 2002) ...................18

*In re Franklin National Bank Securities Litigation*, 393 F. Supp. 1093 (J.P.M.L. 1975) ...........................18

*In re Grain Shipments*, 319 F. Supp. 533 (J.P.M.L. 1970) ....................................................................9

*In re Insurance Brokerage Antitrust Litigation*, 360 F. Supp. 2d 1371 (J.P.M.L. 2005) .....................9, 13

*In re Ivy*, 901 F.2d 7 (2d Cir. 1990) .................................................................................................1, 11

*In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337 (J.P.M.L. 1972) ...............................................10

*In re Marsh & McLennan Companies, Inc., Securities Litigation*, 429 F. Supp. 2d 1376 (J.P.M.L. 2006) ...............18

*In re Nat'l Sec. Agency Telecommunications Recs. Litig.*, 474 F. Supp. 2d 1355 (J.P.M.L. 2007) ...........4

*In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362 (J.P.M.L. 2002) ...............9

*In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968) ...................................................11, 18

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346 (J.P.M.L. 2001) ...........1, 2, 18

*In re StarLink Corn Prods. Liab. Litig.*, 152 F. Supp. 2d 1378 (J.P.M.L. 2001) ..................................18

*In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2017) ...............11

*Mesa Underwriters Specialty Ins. Co. v. Blackboard Ins. Specialty Co.*, 400 F. Supp. 3d 928 (N.D. Cal. 2019) .......14

*Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287 (1993) ..........................................................3, 17

*Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87 (3d Cir. 2018) ...........................................2, 10

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ......................................................................11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) .......................................2, 11

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...............................................................10

**STATUTES**

28 U.S.C. § 1407 ...........................................................................................................................passim

N.D. Cal. Civil L.R. 3-12(a) ..............................................................................................................15

N.D. Cal. Civil L.R. 3-12(e)-(f) .........................................................................................................16

**OTHER AUTHORITIES**

David F. Herr., The Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation 10, 12

Instagram, LLC and Meta Platforms, Inc. (collectively "Meta") respectfully submits this Opposition to the Motions to Vacate filed by Hartford Casualty Insurance Company and Sentinel Insurance Company, Ltd. (collectively, "Hartford") and by Federal Insurance Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, and ACE Property & Casualty Insurance Company (collectively, "Chubb" and with Hartford collectively "Insurers") to Conditional Transfer Order No. 37 (the "CTO")—which conditionally transferred the *Hartford Casualty Ins. Co. et al. v. Instagram, LLC et al.*, No. 1:24-cv-01422 (D. Del.) (the "Hartford Action") to Multidistrict Litigation No. 3047 pending before the Honorable Judge Yvonne Gonzalez Rogers in the District Court for the Northern District of California (the "MDL"). *See* ECF 37, ECF 443, and ECF 446.

## I.    INTRODUCTION

Insurers move to vacate the CTO on two grounds, asserting: (i) transfer by the JPML is improper while Insurers' motions to remand are pending, and (ii) even if it were appropriate, there are no common questions of fact between the Hartford Action and the MDL warranting transfer.  These arguments are wrong, and the JPML can and should transfer the Hartford Action.

First, the JPML has authority to transfer an action despite the pendency of a motion to remand.  *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (holding "that the MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending . . . with objection to be resolved by transferee court"); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) (rejecting opposition to transfer before resolution of remand because "remand motions can be presented to and decided by the transferee judge").  Hartford's primary argument that this case law "failed to grapple with" Article III's requirement that a federal court have subject matter jurisdiction (ECF 443-1 at 9-10) is misplaced the Panel is

empowered to transfer an action before subject matter jurisdiction is resolved because transfer is administrative. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) (explaining that assessing jurisdiction before transfer is not required because "parties' dispute over transfer . . . is a nonmerits issue that does not entail any assumption by the court of substantive law-declaring power" (cleaned up)); *cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (holding that district courts may decide forum non conveniens "bypassing questions of subject-matter . . . jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant"). Consequently, there is no need to delay transfer to accommodate any interest of the transferor court in resolving a pending remand motion. *E.g., In re Prudential Ins. Co.*, 170 F. Supp. 2d at 1347 (denying motion to vacate conditional transfer order despite pending remand motion).

Second, the MDL includes the insurance coverage action Meta filed against Insurers in the Northern District of California (the "Meta Coverage Action"), which seeks to resolve a broader set of insurance disputes between the parties to the Hartford Action. The factual and legal issues that are, or will be presented by, the Meta Coverage Action and the Hartford Action are identical. Further, there is no serious question that the Hartford Action and the Social Media Cases turn on many of the same or overlapping issues pending in California including: Meta's alleged intent regarding the platform features at issue in the Social Media Cases; causality of the alleged injuries in the Social Media Cases; and Meta's scienter regarding the risks and alleged injuries. The plaintiffs in the Social Media Cases allege that Meta acted negligently and intentionally, but Meta's Insurers seek to avoid coverage altogether—including their duties to defend—by, among other things, proving that Meta acted intentionally and caused injuries that

2

were "expected or intended."  Insurers' contention that the Hartford Action involves "purely legal" issues that do not share any common facts with cases in the MDL is plainly inaccurate.

Meta does not seek to "stop" the insurance litigation altogether as Insurers contend. Rather, Meta will ask the MDL to pause insurance litigation over the Social Media Cases as required by applicable law until the many overlapping issues have been decided in the MDL, in order to avoid the "obvious" prejudice from such simultaneous litigation.  *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 301 (1993) (coverage litigation must be stayed "when the coverage question turns on facts to be litigated in the underlying action.").  Insurers' meritless objections to the CTO are part of a strategy to evade a *Montrose* stay by litigating against Meta in Delaware—a state with no material connection to the coverage disputes or the underlying Social Media Cases.  Indeed, Hartford sued Meta preemptively and during negotiation of the scope of its duty to defend presumably for just that reason.

Meta therefore asks the JPML not only to transfer the Hartford Action, but to do so promptly given Insurers' failure to raise any legitimate objection to the CTO.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     The Social Media Cases Are Consolidated Into The MDL.

Starting in 2022, Meta became a defendant in the "Social Media Cases"—thousands of lawsuits by individuals, school districts, local government and tribal entities, state attorneys general, and personal injury plaintiffs, the overwhelming majority of which are sited in California, seeking damages and other relief because of alleged bodily injuries to users purportedly stemming from their use of Instagram and Facebook, among other social media services.  ECF 1, *Instagram LLC et al. v. Hartford Casualty Insurance Co. et al.*, No. 24-cv-09500-YGR (N.D. Cal. Dec. 30, 2024) ("Meta Coverage Complaint") at ¶ 5.

3

On October 6, 2022, the JPML formed a multidistrict litigation to coordinate the Social Media Cases, specifically, those actions involving alleged harms stemming from the purported use of services like those operated by Meta and other companies. *See In re Social Media Adolescent Addiction/Personal Injury Product Liability Litigation*, MDL No. 3047, D.I. 1 (Transfer Order). In its decision to transfer the first wave of cases for consolidated pretrial proceedings, the JPML concluded that those actions "present[ed] common factual questions arising from allegations that defendants' social media platforms are defective" in their design and thus are allegedly "harmful to minors." *Id.* at 2. Because the Social Media Cases have been centralized, Chubb's argument that centralization "should be the last solution" is inapposite. The appropriate consideration is whether, as the JPML concluded, the inclusion of the Hartford Action in the MDL "will eliminate duplicative discovery; prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel, and the judiciary." *Id.* Because the issues Insurers seek to litigate already are centralized the Social Media Cases, it would be inefficient to create a carveout from centralization for the Hartford Action. *See, e.g., In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2873, 2021 WL 755083, at *3 (J.P.M.L. Feb. 4, 2021); *In re Nat'l Sec. Agency Telecommunications Recs. Litig.*, 474 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007).

B.   Meta Seeks Coverage From Its Insurers For The Social Media Cases.

To protect itself against claims for liability to third parties because of bodily injury and property damage, Meta paid millions of dollars to purchase commercial general liability insurance, including from Insurers, for a continuous series of annual policy periods from October 9, 2004 to October 9, 2023. Meta Coverage Complaint at ¶¶ 24. Beginning no later than October 2022, and on numerous occasions since then, Meta has requested that Insurers honor

4

their contractual obligations to defend Meta in the Social Media Cases, which seek damages that are covered or at least potentially covered by the policies they sold to Meta. *Id.* at ¶ 49.

Hartford initially denied coverage for both defense and indemnity in the Social Media Cases. *Id.* at ¶ 50. Only after Meta sent several letters explaining why Hartford's position—that the plaintiffs in the Social Media Cases did not seek damages "because of" "bodily injury" or "property damage" during Hartford's policy period—was erroneous, did Hartford finally agree, nearly a year later, to defend some unspecified subset of the Social Media Cases. *Id.* at ¶ 51.

C.     Hartford Preemptively Sues Meta Based On Facts At Issue In The MDL.

On November 1, 2024, the same day that Hartford ostensibly agreed (in a letter mailed to Meta in California) to defend a subset of Social Media Cases, Hartford filed the Hartford Action in Delaware Superior Court seeking declaratory judgment as to its duties. The allegations in Hartford's operative complaint concern the same factual nucleus as the cases in, and transferred to, the MDL and a coordinated proceeding in California state court. *See* Multidistrict Litigation No. 3047; Judicial Council Coordination Proceeding (JCCP) No. 5255. On December 20, 2024, Chubb—including excess insurers such as Westchester Surplus Lines Insurance Company that are also Chubb companies—filed cross-claims against Meta and other of Meta's excess liability insurers. Those excess insurers were not sued by Hartford and are not parties to the Meta Coverage Action.

Hartford seeks declaratory judgment with respect to its duties to Meta for the Social Media Cases based on allegations that are being actively litigated in the MDL. For example, Hartford asserts that its duties are limited or excused because, among other reasons: (1) the alleged injuries do not arise from an "occurrence," i.e., an accident, but instead solely from Meta's intentional conduct; (2) the Social Media Cases do not seek damages "because of" bodily

injury or property damage as required by the policies; and (3) the alleged injuries were expected or intended by Meta and are therefore excluded.  ECF 1-1, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Dec. 27, 2024) at 21–23 ("Hartford Amended Complaint") at ¶¶ 55, 66.  In addition, Hartford's operative complaint wrongly and directly accuses Meta of, among other things, "deliberate and intentional acts in designing and marketing products to encourage excessive use and/or addict children and adolescents[.]"  *Id.*  Similarly, in the MDL, plaintiffs allege, "Meta has invested its vast resources to intentionally design Facebook and Instagram to be addictive to adolescents."  ECF 494, *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigatio*n, MDL No. 3047 (N.D. Cal. Dec. 15, 2023) (Second Amended Master Personal Injury Complaint) at ¶ 264.  Hartford also wrongly and directly asserts that damages sought by school districts and local government entities are "necessitated by mass social media addiction in minors[.]"  *Id.* at ¶ 24; ECF 729.  And in the MDL, plaintiffs likewise contend that school districts nationwide have made "expenditures on personnel and learning materials to combat social media addiction."  *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, MDL No. 3047 (N.D. Cal. March 27, 2024) (Amended Master Local Government and School District Complaint) at ¶ 4.

On December 27, 2024, Meta timely and properly removed the Hartford Action based on diversity.  ECF 1, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Dec. 27, 2024).  The Hartford Action is currently pending before the Honorable Judge Maryellen Noreika.

Following removal, Meta filed a tag-along notice with the JPML identifying the case for transfer to the MDL.  *See* JPML D.I. No. 421.  Based on that notice, on January 13, 2025, the

JPML issued a Conditional Transfer Order indicating that the Hartford Action should be transferred to the MDL because it "involve[s] questions of fact that are common to the actions previously transferred to the Northern District of California and assigned to Judge Rogers." JPML D.I. No. 425.

On January 16, 2025, Hartford moved to remand the Hartford Action.  ECF 24, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Jan. 16, 2025).  Meta opposed on the ground that Meta's other general liability insurers, which Hartford improperly designated as defendants for the purpose of defeating diversity, should be severed and dismissed because Hartford raised no claims against them or, alternatively, those putative co-defendants should be realigned against Meta because they share the same litigation interests as Hartford.  ECF 43, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Jan. 30, 2025).

On January 24, 2025, Meta filed a Motion to Stay Proceedings Pending Transfer to the MDL, asking that any rulings in the Hartford Action—including issuing any ruling on Insurers' motion to remand—not be issued until the JPML determined whether transfer to the MDL was appropriate.  ECF 36, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Jan. 24, 2025).  Insurers opposed.  ECF 64, 65, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Feb. 7, 2025). Meta's Motion to Stay is fully briefed, but the court has not yet set a hearing as requested by Meta.

On February 7, 2025, Chubb filed a Motion to Expedite asking the Delaware District Court to decide quickly both Hartford's Motion to Remand and Meta's Motion to Stay.  ECF 66, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del.

Feb. 7, 2025).  However, without explanation, Insurers withdrew the Motion to Expedite on February 18, 2025.  ECF 75, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Feb. 18, 2025).

        D.      <u>The MDL Already Includes Meta's Coverage Action Against Its Insurers.</u>

On December 30, 2024, Meta filed the Meta Coverage Action in the Northern District of California, seeking a resolution of all coverage disputes between Meta and the same insurers that Hartford named as defendants in the Hartford Action concerning the Social Media Cases, including claims against the insurers for declaratory relief, breach of contract and bad faith.  *See generally* Meta Coverage Complaint.  On January 7, 2025, Meta filed an Administrative Motion to Relate the Meta Coverage Action to the MDL pursuant to Local Rule 3-12, which provides that actions should be "related" and heard by the same judge where they "concern substantially the same parties, property, transaction, or  event" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and  expense or conflicting results if the cases are conducted before different Judges."  ECF 1504, *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, MDL No. 3047 (N.D. Cal. Jan. 7, 2025). On January 23, 2025, after the Motion to Relate was fully briefed by Meta, Hartford, and Chubb, and after the parties met and conferred as instructed by the court, the MDL court granted Meta's Motion to Relate, holding that the Meta Coverage Action was related to the MDL pursuant to Local Rule 3-12.  ECF No. 37, *Instagram LLC et al. v. Hartford Casualty Insurance Co. et al.*, No. 24-cv-09500-YGR (N.D. Cal. Jan. 23, 2025) ("Related Case Order").

## III.    LEGAL STANDARD

Title 28 U.S.C. § 1407(a) empowers the Panel to transfer proceedings "for the convenience of parties and witnesses" and to "promote the just and efficient conduct of such actions."  "[T]ransfer is appropriate if it furthers the expeditious resolution of the litigation taken

as a whole, even if some parties to the action might experience inconvenience or delay." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d 1375, 1380 (J.P.M.L. 2023). "[T]ransfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Insurance Brokerage Antitrust Litigation*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005); *see also In re Acacia Media Technologies Corp. Patent Litigation*, 360 F. Supp. 2d 1377, 1378 (J.P.M.L. 2005) (same).  Indeed, "[w]here multidistrict litigation involves two or more categories of cases with some overlapping questions of fact and some unique questions of fact it has generally been thought desirable to transfer them to a single district and to assign them to a single judge." *In re Grain Shipments*, 319 F. Supp. 533, 535 (J.P.M.L. 1970).

Pursuant to Panel Rule 7.1, the JPML enters a conditional transfer order when appropriate "to expeditiously transfer apparently related cases." *In re Grain Shipments*, 319 F. Supp. at 534.  After a conditional transfer order is entered, it can only "be vacated upon the showing of good cause." *Id.*

Insurers are incorrect that Meta faces the burden to show the requirements of §1407 are met here, let alone a "heavy burden," as the cases on which they rely apply only to motions to centralize a small group of actions into an MDL.[1]  ECF 446-1 ("Chubb Mot.") at 9; *see also* ECF 443-1 ("Hartford Mot.") at 7.

---

[1] *In re Bank of Am. Fraudulent Acct. Litig.,* 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023) (denying motion to centralize because "[w]here only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate."); *In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying motion to centralize actions unwarranted, where unique questions of fact predominated over any common questions of fact; each plaintiff was member of different plan and sued PBM under different contract); *In re 21st Century Prods. Inc. "Thrilsphere" Cont. Litig.*, 448 F. Supp. 271, 272 (J.P.M.L. 1978) (denying motion to transfer where only two actions were involved and movants failed to meet "heavy burden to show that those common questions

IV.    **ARGUMENT**

A.    <u>This Panel Can and Should Transfer the Hartford Action Despite Pendency of
Insurers' Motions To Remand.</u>

Seeking to sidestep authorities fatal to its position, Hartford argues that because the Panel
was created under Article III of the U.S. Constitution, any decision it renders absent a prior
finding of subject matter jurisdiction would be an impermissible advisory opinion.  Hartford
Mot. at 8-11.  To the contrary, the Panel is empowered to transfer the Hartford Action before
subject matter jurisdiction is resolved because transfer pursuant to 28 U.S.C. § 1407 is
administrative, rather than substantive.  *See* David F. Herr., <u>The Multidistrict Litigation Manual:
Practice Before the Judicial Panel on Multidistrict Litigation</u> ("Multidistrict Lit. Man.") ("The
Panel exists to assist in the effective administration of justice and does not really adjudicate the
rights of parties"); *see also In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1339–40
(J.P.M.L. 1972) ("The framers of Section 1407 did not contemplate that the Panel would decide
the merits of the actions before it and neither the statute nor the implementing Rules of the Panel
are drafted to allow for such determination."); *Reading Health Sys. v. Bear Stearns & Co.*, 900
F.3d 87, 95 (3d Cir. 2018) (explaining that assessing jurisdiction before transfer is not required
because "parties' dispute over transfer . . . is a nonmerits issue that does not entail any
assumption by the court of substantive law-declaring power" (cleaned up)).  This critical
distinction means that the Panel's transfer orders are not advisory opinions and do not violate
Article III.  *Contra* Hartford Mot. at 8-11.[2]

---

of fact are sufficiently complex and that the accompanying discovery will be so time-consuming
as to justify transfer").

[2] All authorities Hartford cites allegedly to the contrary are *unrelated to JPML proceedings* and
inapposite.  *See e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Ruhrgas*

The Panel recently addressed this very issue, deciding that it has authority to order immediate transfer of a case with a pending jurisdictional uncertainty.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.,* 669 F. Supp. 3d at 1377.  Significantly, the Panel noted that jurisdiction "'is vital only if the court proposes to issue a judgment on the merits,' which occurs when a court assumes 'substantive law-declaring power.'"  *Id.* at 1378–79 (quoting *Sinochem Int'l* , 549 U.S. at, 431, 433).  Like the plaintiffs in *In re Aqueous Film-Forming Foams Products Liability Litigation*, Insurers "cannot argue that the Panel, in ordering transfer of its action, is ruling on the merits of its claims or otherwise assuming 'substantive law-declaring power.'"  *Id.*

Because the Panel can and routinely does defer jurisdictional issues to transferee courts, consistent with its purpose to promote justice and efficiency in the federal system, there is no need to "grapple with" Hartford's argument.  *See* Hartford Mot. at 9-10 (quoting *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990)); *infra* Section IV.C.  And a transfer does not prejudice Insurers' rights, because "the powers of the transferee court are coextensive with that of the transferor court" and "the transferee court may make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer."  *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968); *see also In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1325 (J.P.M.L. 2017) ("Transferee courts consider a wide variety of legal issues that are subject to differing precedent in their transferor courts.").  Rather than address applicable authorities, Hartford improperly focuses on the propriety of removal and rehashes its arguments for remand.  While Meta believes removal was proper, to the extent Insurers' arguments for

---

*AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

11

remand have any arguable merit, the transferee court is just as well suited as the transferor court to consider them.

    B.    <u>Factors Under This Panel's Consideration Uniformly Favor Transfer.</u>

Title 28 U.S.C. § 1407(a) empowers the Panel to transfer "civil actions involving one or more common questions of fact" upon a "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  The standard easily is satisfied here.

    *1.*    *The Hartford Action Shares Common Questions Of Fact With The MDL.*

"The requirement of common issues as stated in the statute is a simple requirement.  If there are any common issues, transfer can be ordered."  Multidistrict Lit. Man. § 5:4. Common issues are here in abundance.  In fact, they are highlighted by Insurers' selective and prejudicial adoption in their Hartford Action pleadings of the Social Media Case plaintiffs' still unproven allegations against Meta.  Specifically, the bases on which Hartford seeks to deny Meta's claims for defense costs are the very allegations made against Meta in the underlying Social Media Cases, including: (1) the alleged injuries do not arise from an "occurrence" or accident, but instead arise solely from Meta's intentional conduct, and (2) the plaintiffs' alleged injuries were "expected or intended" by Meta and are therefore excluded from coverage under the policies. Hartford Am. Compl. ¶¶ 55, 66; *see e.g.*, Second Amended Master Personal Injury Complaint at 107 ("Meta intentionally encourages youth to excessively use its platforms").  Chubb essentially repeats Hartford's arguments.  Chubb Third Party Compl. at ¶ 64  (denying coverage in part because "[a]ny bodily injury or property damage must not arise out of an act that is intended to, or would be expected from the standpoint of a reasonable person to cause bodily injury or property damage").  Because the Insurers' coverage defenses rest—by their own admission—on

the allegations made by the plaintiffs in the underlying Social Media Cases, there is necessarily overlap with the Social Media Cases.

Longstanding, applicable California law[3] is clear that an insurer's duty to defend is excused only "if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 fn. 15 (1966). But here, the Social Media Cases raise strict liability and negligence claims with respect to their alleged damages, which fall squarely outside of Insurers' cited policy exclusions. *See e.g.*, Second Amended Master Personal Injury Complaint at 235–254. Both the Social Media Cases and the coverage disputes will require courts to make overlapping determinations about Meta's intent when developing its platforms and features, Meta's knowledge of any alleged harm caused by the same, and the causal nexus between Meta's platforms and alleged injuries to users. While the court may resolve these factual disputes to different ends, their commonality is self-evident. For example, a determination in the Social Media Cases that Meta did not intend or expect its platforms to injure users would invalidate Insurers' duty to defend analysis. *See In re Insurance Brokerage Antitrust Litigation*, 360 F. at 1372 ("Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer.").

---

[3] There is no serious question that California law applies to insurance coverage issues for the Social Media Cases. Meta purchased and received the policies at issue from its principal place of business in California; they apply to Meta's operations in California; the overwhelming majority of the Social Media Cases are pending in California; and the Insurers negotiated their duties to defend in California. Despite their efforts to obfuscate in their Motions to Vacate, and their ostensible desire to have a Delaware court decide the issues, Insurers already acknowledged repeatedly that California law governs the insurance disputes. *See* Hartford Amended Compl. at ¶42 (citing *Buss v. Superior Ct.*, 16 Cal. 4th 35 (1997) as the basis for its "right to recoup defense fees"); *see also* ECF 1-1, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Dec. 27, 2024) at 222 ("Chubb's Third Party Complaint) at ¶ 4 (seeking a declaration clarifying whether Meta's claims are covered "as a matter of California public policy").

To deflect the clear commonality between the factual issues in the Social Media Cases and the coverage disputes, Insurers incorrectly assert that the duty to defend is a "purely legal" question which will not "concern the actual intentionality of Meta's conduct."  Hartford Mot. at 14; Chubb Mot. at 8.  While *trigger of* the duty to defend may present mostly legal questions, the validity of Insurer *defenses to that duty based on exclusions* most certainly do not.  Indeed, Insurers have conceded the Social Media Case pleadings triggered their duty to defend, but they now seek to litigate (in Delaware no less) the disputed facts regarding Meta's actions and scienter on which their coverage defenses to the duty to defend depend.  Moreover, the California Supreme Court has counseled that "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993); *see also Mesa Underwriters Specialty Ins. Co. v. Blackboard Ins. Specialty Co.*, 400 F. Supp. 3d 928, 941 (N.D. Cal. 2019) (explaining that "potential [for coverage] cannot be conclusively negated by pointing to disputed allegations in the very complaint that insureds are seeking to defend against."(cleaned up)). Accordingly, discovery will be necessary to litigate the parties' duty to defend arguments, and that too would intersect and overlap substantively and substantially with discovery underway in the MDL on the same issues.

### 2. *Transfer Would Promote Efficiency And Convenience.*

The MDL court is best positioned to provide comprehensive resolution to all parties' insurance claims.  Transfer is easily the proper and most efficient outcome, for three primary reasons.  *First*, the MDL court's jurisdiction over both coverage actions will eliminate the risk of inconsistent rulings, including on Insurers' duty to defend.  *Second*, the MDL court's existing knowledge of the underlying Social Media Cases will promote judicial economy.  Not only is the

14

MDL court most familiar with the nature of the allegations against Meta, but it is most familiar with the fact development and discovery on the allegations on which Insurers' denials of coverage will turn.  *Third,* the MDL court, being seated in the Northern District of California, has the subject matter expertise on, and great familiarity with, applicable California law.

Comprehensive resolution in the MDL court also promotes convenience for the parties because all or the majority of evidence as to both the Social Media Cases and the resulting coverage litigation is located in California.  Further, Insurers routinely insure and transact with businesses headquartered in California and frequently litigate cases in California courts, including as plaintiffs.

Most Insurer arguments to the contrary are inaccurate.  For example, to suggest that the Meta Coverage Action is duplicative and therefore inefficient, Chubb represents that it relates "solely to the duty to defend."  Chubb Mot. at 3–4.  To the contrary, the Meta Coverage Action seeks damages not only for Insurers' breaches of the duty to defend, but also raises additional breach of contract and bad faith claims not present in the Hartford Action.[4]  Meta Compl. at ¶¶ 82–95.  In yet another example, Chubb claims that "[t]reating a case administratively as related has nothing to do with the Section 1407 analysis" because it looks to "avoid unnecessary 'duplication of labor and expense[.]'"  Chubb Mot. at 8 (quoting N.D. Cal. Civil L.R. 3-12(a).  But avoiding unnecessary duplication of labor and expense necessarily *promotes efficiency*.  Finally, Hartford mischaracterizes the MDL court's order relating the Meta Coverage Action to the MDL as a "rubber stamp," disregarding the considerable effort that the court made to understand the issues, which intersect with this Panel's § 1407 efficiency analysis.  Hartford

---

[4] To the extent Meta is required to file a pleading in the Hartford action, it likely will raise breach of contract and breach of the implied covenant of good faith and fair dealing claims already raised in the MDL.

Mot. at 15.  In fact, the court ordered that Meta submit a Reply to Hartford's Opposition to relation, and that the parties meet and confer to provide the court with a joint statement of the issues, neither of which were required under the local rules.  ECF 1531, *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, MDL No. 3047 (N.D. Cal. Jan. 14, 2025) (Order Deferring Ruling on Administrative Motion to Relate); *see also* N.D. Cal. Civil L.R. 3-12(e)-(f).

Insurers' other arguments to the contrary are unpersuasive.  For example, the fact that there are "no *similar* remand motions pending in the MDL,"  Hartford Mot. at 12 (emphasis in original), is a distinction without difference given that the court has ruled efficiently on at least one previous remand motion in the proceeding. *See, e.g., In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 4:23-cv-00547, D.I. 77 (N.D. Cal. July 8, 2024); *see also* Related Case Order (relating the Meta Coverage Action to the MDL within 16 days of Meta's motion).

Additionally, the fact that some Insurers—who do not oppose transfer—are citizens of Delaware (*see* Hartford Mot. at 18) also has no bearing on the Panel's evaluation of efficiencies because all Hartford and Chubb entities in this litigation are citizens of other states.  Hartford Amend. Compl. at ¶¶ 3–4 (corporate citizenship in Indiana and Connecticut); Chubb Third Party Compl. at ¶¶ 5–8 (corporate citizenship in Indiana, New Jersey, Georgia, and Pennsylvania).  In its decision denying transfer, the *In re Chinese-Manufactured Drywall Products Liability Litigation* Panel found it significant that "the insurance companies that might benefit the most from the efficiencies of centralization, all oppose these motions."  2010 WL 11747797, at *2 (J.P.M.L. 2010).  It is equally significant that none of the Delaware Insurers that might benefit most from the Panel vacating its Conditional Transfer Order have asked it to do so in this matter.

3.     *Transfer Would Promote Justice.*

Insurers argue that transferring the Hartford action "would subvert [the] important goals of § 1407 since Meta seeks to stay all coverage litigation until the Social Media Cases are resolved.  Chubb Mot. at 9; *see also* Hartford Mot. at 15-16.  In reality, transferring would promote justice precisely *because* of Meta's pursuit of a stay.  California law requires that a coverage action be stayed pending resolution of the underlying litigation where it may prejudice the insured's defense.  *See Montrose*, 6 Cal. 4th at 301.  In fact, in *Montrose*, the California Supreme Court opined that where a third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct—as the Insurers do here in the Hartford Action—"the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious."  *Id*. at 302.  A finding that insurers are not obligated to defend due to Meta's purported intent or knowledge would have a prejudicial—potentially even preclusive—effect in the Social Media Cases.  This result would be plainly unjust.

Additionally, while Insurers make much of the fact that Meta has initiated its own coverage action in the Northern District of California, they ignore the blatant injustice in their filing in Delaware in the first place.  Hartford filed its coverage action in Delaware Superior Court, also naming Chubb—against which it admittedly has no claims—in an attempt to defeat diversity, on the very same day that it sent its coverage decision via U.S. mail to a Meta risk manager in California.  Meta Coverage Complaint at ¶ 8.  Unlike California, Delaware has no connection whatsoever to the coverage issues.  Indeed, Meta's "sea of filings" exists only to respond to Insurers' apparent pre-emptive forum shopping.  *See* Hartford Mot. at 14.

17

C.     This Panel Should Not Delay Transfer.

Insurers argue that even if the Panel can transfer the Hartford Action to the MDL court, it should refrain from doing so before the District of Delaware rules on their pending motions to remand.  Hartford Mot. at 12; Chubb Mot. at 10-11.  Delay here would negate the Panel's purpose to promote efficiency under § 1407 and contradict decades of precedent.

Given that "the powers of the transferee court are coextensive with that of the transferor court," *supra* Section IV.A. (quoting *In re Plumbing Fixture Cases*, 298 F. Supp. at 495), the Panel routinely declines requests to postpone decisions in order to allow for potential remand to state courts.  In fact, this Panel repeatedly has found that "there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion."  *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973); *In re StarLink Corn Prods. Liab. Litig.*, 152 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 227 F. Supp. 2d 1389, 1391 (J.P.M.L. 2002); *In re Franklin National Bank Securities Litigation*, 393 F. Supp. 1093, 1095 (J.P.M.L. 1975); *In re American Home Mortg. Securities Litigation*, 528 F. Supp. 2d 1376 (J.P.M.L. 2007); *In re Marsh & McLennan Companies, Inc., Securities Litigation*, 429 F. Supp. 2d 1376 (J.P.M.L. 2006).

There is no credible suggestion that transfer would delay determination of the remand motion, particularly since Chubb has voluntarily withdrawn its Motion to Expedite Review.  *See* ECF 75, *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 1:24-cv-01422-MN (D. Del. Feb. 18, 2025).  Panel Rule 2.1(d) provides "[t]he pendency of a motion . . . [or] conditional transfer order . . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not

limit the pretrial jurisdiction of that court."  *See* ECF 425 (Conditional Transfer Order entered on January 13, 2025).  This Panel typically is "not persuaded" by arguments "that transfer will delay adjudication of [plaintiffs'] remand motions" because "[t]he transferee court has in place a procedure that allows parties to raise remand arguments following transfer."  *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d at 1379

## V.    CONCLUSION

For the foregoing reasons, Meta respectfully requests that this Panel transfer the Hartford Action to MDL 3047 without delay.


DATED: February 28, 2025                    **COVINGTON & BURLING LLP**

By: _____
/s/ Heather W. Habes

Martin H. Myers
Heather W. Habes
Regan J. Hines

*Attorney for Plaintiffs Instagram, LLC and Meta Platforms, Inc.*